## ROBINSON v. OSTENDORFF.

1. LIMITATION OF ESTATES—TRUSTS.—Under the will of a testator who died in 1867, his entire estate was given to his wife for widowhood or life, and then to "revert" to his children, according to the laws of this State, the children of a deceased child to take their parent's share, the portion of the daughters to "be invested in trustees" for their use, and not liable to their husbands' debts, and at the death of the daughters, their share to be divided among their children, the children of a deceased child to take their parent's share. Executors were appointed with power to sell and reinvest, and to advance portions not exceeding one-half by estimation, "having regard to the settlement on the females." The trustees never were appointed, and the executors qualified and died, and one unmarried daughter is the sole surviving beneficiary under the will. *Held*, that the legal title was vested in this survivor under the statute of uses and the Constitution of 1868.

2. POWERS—ADMINISTRATRIX DE BONIS NON.—And this daughter having become administratrix *de bonis non*, she could convey a lot of land, a part of testator's estate, for purposes of reinvestment. *Gen. Stat.*, § 1972.

3. IBID.—EQUITY—SALE.—And the Court of Equity would confirm the sale, even if she took only a life estate, the remainder being to her children, and no provision made for the contingency of her dying childless, and, therefore, all parties in interest being before the court.

4. LIMITATION OF ESTATES.—REVERSION.—But the daughter, upon the death of the life tenant and her survivorship of the only other living beneficiary, did not take a life estate, but an estate in fee. If the word "revert" in this will is given its technical meaning, then, whether the reversion vested at the death of testator or at the death of the widow, the life tenant, it would have passed, under the statute of distributions, to his heirs at law, and at last to this daughter as the heir to all the others.

5. IBID.—IBID.—CONTINGENT REMAINDERS.—If, however, "revert" has the meaning of "go to," then the contingent remainder over to the children of testator's daughter would be void, (1) because repugnant to the prior contingent remainder in fee, and (2) because it would be a contingent remainder (not in substitution for a preferred remainder on failure of the contingency on which it depended, but) subsequent in time, with no previous particular estate to support it—a contingency dependent upon a contingency.

Before KERSHAW, J., Charleston, February, 1892.

James K. Robinson, a citizen and resident of the city and county of Charleston, and State of South Carolina, departed this life in Charleston on or about the 18th day of July, A. D. 1867, leaving of full force his last will and testament, dated the 17th day of October, A. D. 1866. This will was probated on July 18th, 1867, and the three executors, Mary T. Robinson, Stephen T. Robinson, and John R. Dukes, qualified as such on the same day. The estate was duly administered by these executors, and all the debts paid. No final settlement, however, was made by them, and no trustees were ever appointed by these executors, as referred to in the fourth clause of the will of the testator.

At the time of the death of James K. Robinson, he left surviving him his widow Mary T. Robinson, his daughter Annie R. Robinson, and his son T. Grimball Robinson. There had been other children, but all of them had predeceased the testator, intestate and unmarried. Mary T. Robinson, the widow, went into possession of the estate, and so remained until the time of her death, hereinafter set out. Thomas Grimball Robinson, the son of the testator, departed this life, of full age, and unmarried and intestate, on or about the 5th day of December, 1882. John R. Dukes, one of the executors under the will, de-

parted this life before the death of Mary T. Robinson, the widow of testator. Mary T. Robinson, the widow of the testator, died on or about the 15th day of October, 1883, unmarried and intestate.

Annie R. Robinson, the daughter of the testator, was thus left the sole lineal descendant of either the testator or his wife; she was of full age at the time of the death of Mary T. Robinson, her mother, and she is still alive and unmarried, and aged about forty-two years. After the death of Mary T. Robinson, Stephen T. Robinson filed his formal renunciation of executorship, and by the decrees and orders of the Probate Court, dated respectively the 24th day of July, 1885, and the 16th day of September, 1885, letters of administration *de bonis non, cum testamento annexo*, were issued to Annie R. Robinson upon the estate of her father, James K. Robinson. She has given the necessary bond, and duly administered the affairs of the estate from that time until now. Annie R. Robinson was also appointed administratrix of the estate of Mary T. Robinson on the 1st day of January, 1884, and administratrix of the estate of Thomas Grimball Robinson on the 1st day of January, 1884. She has duly given bond in these estates, and has paid such debts as there were existing against them, and has duly and legally administered on the affairs of the said estates. Since the death of her mother, she has been in entire and complete possession of all the property and assets of the estate of her father, brother, and mother.

Among the other property of the estate of James K. Robinson, there was a certain piece of real estate in the city of Charleston, on the southwest corner of Chapel and Alexander streets, which had been leased by Mary T. Robinson in her lifetime to Charles L. Ostendorff, the defendant, and others. A full description of this real estate is annexed hereto. On the 30th day of January, 1884, Annie R. Robinson made a lease of a part of this property to C. L. Ostendorff for ten years (the other portion of the property being rented by her to other people). C. L. Ostendorff, desiring to purchase this entire property, Annie R. Robinson thereafter, to wit, on the 5th day of March, 1891, made an agreement of purchase and sale with him for the whole of the

property. This agreement of purchase and sale is made by her in her own right, and as administratrix *de bonis non, cum testamento annexo,* of James K. Robinson, in which manner she is ready to make a deed to the said C. L. Ostendorff. A copy of this agreement of purchase and sale is hereto annexed. Miss Robinson deems it proper and expedient to sell this property for a change of investment, as it is unprofitable, and yields little or no income.

The parties desire to complete the transaction, but the said defendant, C. L. Ostendorff, desires first to have the decision of the court as to whether the deed of the said Annie R. Robinson, in her own right, and also as administratrix *de bonis non, cum testamento annexo,* aforesaid, will pass a good and valid title to the said property. And for this reason this case is submitted to the court as a "controversy without action." And the said vendor requires specific performance at the hands of the purchaser. It is also admitted, that the sale and change of investment are desirable and advantageous, and that the price is a full one.

### WILL OF JAMES K. ROBINSON. * * *

*Item.*—I recommend and direct that all my just debts be paid.

*Item.*—To my beloved wife, Mary T. Robinson, I give and bequeath all my household goods, silver, and furniture, or any rights I may have in them, to her own use and behoof, forever. Likewise, I will and bequeath to my wife, Mary T. Robinson, during her widowhood, all my estate, both real and personal, of whatever kind or condition, to have and to hold the same during her widowhood or natural life, and at her decease or marriage, to revert to my children, according to the laws of the State of South Carolina; the children of a deceased child to take, by representation, the share such child would have taken if then living. It is my will, that the portion or portions of my daughter or daughters, as may be, shall be invested in trustees, to be appointed by my executrix and executors, for their own proper use, and not liable for the debt or debts of their husband or husbands, as may be; and at the death of my daughter or daughters, shall be divided among their children,

share and share alike, the child or children of a deceased child taking the share to which such child would have been entitled.

*Item.*—I hereby appoint my wife, Mary T. Robinson, my executrix, and my brother, Stephen T. Robinson, and my friend, John B. Dukes, my executors, of this my last will and testament; and I hereby authorize and empower executrix and executors to sell such portion of my estate, either real or personal, not otherwise bequeathed, as may be deemed proper and expedient, for a change of investment from time to time, or for other purposes.

*Item.*—I authorize my executrix, if she should think proper, and with the joint concurrence of my executors, to pay over to either of my children, on their coming of age, a portion of my estate—not, however, exceeding one-half of the estimated amount of such portion as would be coming to such child at her decease, also having regard to the settlement on the females.

In witness whereof, &c. [Duly executed and probated.]

### AGREEMENT OF PURCHASE AND SALE.

THE STATE OF SOUTH CAROLINA. Annie R. Robinson agrees to sell, and C. L. Ostendorff agrees to purchase, the property set out below on the terms named: Lot on the corner of Alexander and Chapel streets, in the city of Charleston, at present under lease to the said Ostendorff, by lease from Miss Robinson, dated January 30th, 1884, and on which the said Ostendorff has erected certain structures; and also the lot lying next west of the above, and at present in the occupation of a colored tenant of Miss Robinson (the full description of said two pieces of property being hereto annexed). *Terms.*— Three thousand five hundred and fifty dollars cash, and purchaser to pay all taxes payable in 1891, and $25 for deed. The lease of 30th January, 1884, above referred to, to continue until the purchase money is paid, and then the rent to be settled for and lease cancelled in full. Witness the hands and seals of the parties, this 5th day of March, 1891.

ANNIE R. ROBINSON, [L. S.]

*In her own right, and as administratrix with the will annexed, de bonis non, of James K. Robinson.*

C. L. OSTENDORFF, [L. S.]

In the presence of
        EDWARD J. PEPPER.
        EDWARD STEENKIN.

[Here follows full description of property.]

The decree of the Circuit Judge was as follows:

This is a controversy without action, and came on to be heard upon an agreed statement of facts, which are fully set out in the case, as consented to on both sides.

Miss Robinson, in her own right, and also as administratrix with the will annexed, *de bonis non,* of James K. Robinson, her father, has contracted to sell to the defendant certain premises fully described in the case. The defendant is desirous of meeting his contract, but has some hesitation with regard to taking the title until it has been passed upon and confirmed by court. The defendant's fear is that Miss Robinson only took a life estate in the property, under the will of her father. I do not so construe the will, as appears hereinafter in this opinion. But, granting that this is the case (for the purposes of reaching a ripe conclusion), even then I think that the title, under the present circumstances, would be a good one, and that for the following reasons:

*First.* In the first place, even if Miss Robinson took only a life estate under the will of her father, I am of opinion that the legal title to the property would be in her. While there is some direction in the will as to trustees being appointed by the executors and executrix, yet, as a matter of fact, this was never done, and both the executrix and executors have long since departed this life. In addition to this, under the law in this State, the trust was a dry trust, and executed by the statute, for there was nothing to be done by the trustees, who were merely to hold the property for the daughters, "for their own proper use." *Ramsay* v. *Marsh,* 2 McCord, *252; *Howard* v. *Henderson,* 18 S. C., 188. It is true, that the words, "and not liable for the debt or debts of their husband or husbands," are used in the will. But, under the Constitution of 1868, the law provided that a woman's estate should be free from her husband's debts, and hence there was no use for the

trustees to be appointed for this purpose.  And there was no other duty required of the trustee which the Constitution did not provide for.  *Witsell* v. *Charleston,* 7 S. C., 88–103.  Therefore, both under the statute of uses and under the Constitution of 1868, the legal title would vest in Miss Robinson.

*Secondly.*  Miss Robinson is also the administratrix with the will annexed, *de bonis non,* of the estate of James K. Robinson, and under the law in this State succeeds to the rights of the executors.  Gen. Stat., §§ 1881, 1972.  The executors under the will had full power of sale, in their discretion, for the purpose of investment or otherwise; and from the facts of the case, it appears that Miss Robinson, as administratrix, is exercising this discretion, and is selling for the purpose of a necessary reinvestment.  Her title as administratrix, therefore, would also appear to be good.

*Third.*  Even if, however, the above were not the case, then this court, as a court of equity, could confirm the sale to Ostendorff, and order the conveyance made by Miss Robinson; under the construction that she only took a life estate, the remainder would be to her children, provided she left any.  There is no provision made, however, in the testator's will, or the contingency of her dying childless, and hence he died intestate as to this, at the time of his death, and Miss Robinson would, therefore, take this remainder.  2 Jarm. Wills, 870; *Joslyn* v. *Hammond,* 3 Myl. & K., 110.  As a matter of fact, she is unmarried, is now forty-two years of age, and is the sole lineal descendant of the testator, her father; all others are mere strangers.  All parties, therefore, are before the court, who are in being, and who have any interest whatsoever in the property.  It is, therefore, competent for this court, as a court of equity, to treat this proceeding as a request to sell, and to confirm this sale as a judicious one, for a change of investment.  It is admitted in the facts of the case, that the sale is an advantageous one, and the change of investment desirable, and that the price is the full value of the property.  And this court has a full right to confirm this sale and order the title made to the purchaser.

On the above three grounds, therefore, I hold that the sale

would be a good one, and should be confirmed and ordered by this court, even if the estate of Miss Robinson were treated as a life estate.

But, as already stated, I do not think that the daughter took a life estate under the will of her father. A brief examination of this will, will show that the wording is peculiar. The testator states, that at the death of his wife, the life tenant, the property is to "revert" to his children, according to the laws of the State of South Carolina, the child or children of a deceased child to take the share the parent would have taken if then living. It would be possible to treat the word "revert" either in its technical sense, or else to construe it as the equivalent of "give" or "to go to."

I will first ascertain what the construction of the will would be, treating this word in the first of those meanings. If the testator used the word "revert" in its technical sense, then this reversion either vested at the time of his death or else it took effect at the time of the death of the life tenant. If his intention was, under the will, for the reversion to take effect at the time of his death, then the testator, under the cases, did nothing under the will but dispose of a life estate, and as to the rest of the estate, he merely directed it to vest in such persons as the law would have given it to, if he had died intestate. For he merely lets it "revert" to his children. In other words, the effect of that portion of his will was the same as if he had made no further will at all, after he had disposed of the life estate to his widow; and, hence, under the cases, the children would take, *not under the will,* but independently of the will, *by the statute,* and all subsequent limitations over, would have failed, because they took under the statute and not under the will. 4 Kent Com., 355; 6 Am. & Eng. Enc. L., 897.

If, however, the testator intended the word "revert" to be used in its technical sense, but not to take effect until the termination of the life estate, then the fee would never have vested, at the time of his death, in any one; and hence, under the law, it would have vested immediately in the wife and two children, descending, of course, under the facts of this case, to Miss Rob-

inson, the surviving child, upon the death of her mother and brother intestate. *Seabrook* v. *Seabrook*, McMull. Eq., 206; *Rochell* v. *Tompkins*, 1 Strob. Eq., 114; *Brooks* v. *Brooks*, 12 S. C., 457; *Andrews* v. *Loeb*, 22 *Id.*, 274. The last case above cited is almost identical with the present one.

If, however, the word "revert" in the will be construed as an equivalent of the word "go to," or "I leave," then the testator would speak as follows (*Jiggetts* v. *Davis*, 1 Leigh (Va.), 404): "I leave my property to my wife for life or widowhood, and at her death or marriage, the same is 'to go to' my children, according to the laws of the State of South Carolina, the children of a deceased child to take, by representation, the share such child would have taken if then living." Under the law in this State, as shown by a number of cases, this would be a life estate in the wife, with contingent remainders in fee to either the children or to the grand-children, as the case might be. *Dehon* v. *Redfern*, Dudley Eq., 115; s. c. Rice, 464; *Faber* v. *Police*, 10 S. C., 388; *McElwee* v. *Wheeler*, *Ibid.*, 404. And the remainders over, in the attempted limitation to the children of the daughters, in the *subsequent* clause of the will, is also a contingent remainder, for the testator directs that the portions of the *daughters, at their death,* to be "divided among their children, the child or children of a deceased child taking the share to which such deceased children would have been entitled." There would, therefore, be *two successive* estates in contingent remainder in fee, the one subsequent to and dependent on and through, and *not instead of the other,* and the later one not to take effect unless the other first took effect.

These remainders over to the children of the daughter, after the life estate, which is claimed to have been created, would be void for two reasons:

First. Because, inasmuch as there was a contingent remainder *in fee* to the first taker, no remainders in fee could be limited over afterwards, inasmuch as a fee cannot be mounted upon a fee. 4 Kent Com., 199; 2 Wash. R. P., 568, 575. The subsequent fee to the children of the daughters, in case they died

leaving children, would be repugnant to the fee first given them. *Moore* v. *Sanders*, 15 S. C., 440.

Secondly. As has already been seen, after the estate, which is given to the daughter, the testator endeavors to create another contingent remainder, for the property is *then* to be divided among the *children* of the daughter, or, if they have died, among *their* children; these, as already shown, are also contingent remainders to the children of the testator's daughters, or the children of such children. And the will must be read and construed *as at the testator's death*, for all these estates in remainder must have been created at the same time when the particular estate, claimed to support them, passed out of him. *Faber* v. *Police*, 10 S. C., 387; 6 Am. & Eng. Enc. L., 897. We would thus have subsequent contingent remainders, limited and depending upon prior contingent remainders, for we would have the contingent remainders to the children and grand-children of the daughter depending upon the prior estate of the daughter, which, at the time of the testator's death, was only a contingent estate. Hence, the contingent remainders to the children or grand-children of the daughters would have no previous *particular* estate to support them, for, at the testator's death, the estate of the daughters was a mere contingency. There being, therefore, then, no particular estate, the contingent remainders over were void. *Cases last cited.*

It is clear, also, both on principle and authority, that, for another reason, a contingent remainder cannot be thus limited after and dependent upon a prior estate in contingent remainder. The law is, that contingent remainders may be limited collaterally along with other contingent remainders, so that if the first contingent remainder does not take effect, the others may. But where the last contingent remainder is subsequent to the first, and depending upon it, and cannot take effect *unless* the first contingent remainder becomes of force, then the subsequent contingent remainder is void and useless, for the very simple reason, that a contingency cannot be made to depend upon a contingency. The successive contingencies must be substituted for the prior ones, and not succeed and come through them. 2 Wash. R. P., 575 and 576; 4 Kent. Com.,

*p. 200. In other words, if the first estate be a certain estate, any number of contingent estates may hang upon it, collateral to each other, and to take effect *successively* to and *in place of* the prior ones *if* the latter do not take effect. But if the first estate be itself a contingent one, not fixed, but doubtful, and it is necessary for the following contingencies to be *subsequent in time*, and to *depend upon*, and *come through*, the prior contingency, the subsequent ones are void. Now, at the death of Mr. Robinson, it did not appear that his daughters would ever take any estate, and hence the attempted estate to *their* children, *through* them, failed as void.

I, therefore, take the view, that whether or not the words "revert" be construed in their technical meaning, or as the equivalent of "give," in either event, the subsequent contingent remainders to the children of Miss Robinson never took effect, and the fee in the property vested in her, as to a part of the property, upon the death of the life tenant, and as to the whole of it, upon the death of her brother intestate. I am, therefore, of opinion, and hold, that the deed of Miss Robinson, in her own right, and as administratrix with the will annexed, *de bonis non*, of James K. Robinson, would convey a valid title, and that the proposed sale is a desirable and judicious one, and should be carried into effect.

It is, therefore, ordered, adjudged, and decreed, that the sale by the plaintiff to the defendant be confirmed and carried into effect, and that the plaintiff give her deed in her own right, and as administratrix with the will annexed, of James K. Robinson, and that the defendant, C. L. Ostendorff, forthwith comply in accordance with the terms of the contract set out in the record. And that defendant pay costs.

The defendant appealed on the following exceptions:

I. Because his honor erred in holding that if Miss Robinson only took a life estate under the will of her father, that still the legal title to the property would be in her.

II. Because his honor erred in holding that the title of Miss Robinson, as administratrix of her father, would be good.

III. Because his honor erred in holding that the deceased

Robinson died intestate as to this property, and his daughter Miss Robinson would, therefore, take this remainder.

IV. Because his honor erred in holding that the sale would be good, and should be confirmed and ordered by this court, even if the estate of Miss Robinson were only a life estate.

V. Because his honor erred in holding that whether or not the word "revert" be construed in its technical meaning or as equivalent to "given," in either event the contingent remainders to the children of Miss Robinson never took effect, and the fee in the property vested in her upon the death of her brother intestate.

VI. Because his honor erred in holding that the deed of Miss Robinson, in her own right, and as administratrix with the will annexed, *de bonis non*, of James K. Robinson, would convey a valid title.

VII. Because his honor erred in holding that the title tendered to the defendant is a marketable title, and must be accepted by him as such.

This controversy without action having been signed and sworn to only by the attorneys, the parties filed with the record an affidavit in the form prescribed by statute, and ratifying and confirming the action of their attorneys. This affidavit was signed by the parties themselves.

*Messrs. Mordecai & Gadsden,* for appellant.

*Messrs. Smythe & Lee,* contra.

December 1, 1892. The opinion of the court was delivered by

MR. JUSTICE McGOWAN. We agree with the Circuit Judge in this case; and finding that we could not add anything to his elaborate argument and citation of authorities, we adopt his decree as the judgment of this court.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.