HOWE v. GREGG.

1. LIMITATION OF ESTATES—TRUSTEES—ASSIGNMENT.—This will construed to give A and B a life estate in the lands devised, as quasi trustees for themselves and children, but assignment by them of leases of these lands to secure their debts sustained, although the will declares that such lands shall neither be sold, rented or mortgaged to secure such debts.

2. PARTIES.—In an action involving the disposition of the rents of lands devised to a life tenant as quasi trustee for himself and remaindermen, the remaindermen are proper parties.

Before BENET, J., Florence, August, 1897.    Affirmed.

Action by the executors of S. W. Kennedy *v.* Emily M. Gregg *et al.* The following is the Circuit decree, omitting the quotations from the will of Malvina Howe, because it is fully quoted in the opinion:

The son, James Arnold Howe, did contract debts amounting to nearly $3,000. His aunt, Sarah W. Kennedy, came to his help, took up the debts, and as security for the money she paid, she took from James and his wife, Eoline, assignments of certain rent leases of the land devised under the will of Malvina Howe. She seems to have borrowed the money from the Bank of Florence, giving the bank her note for the amount, and securing the note by a mortgage of land, and also by assigning to the bank the rent leases in question. Upon these leases the bank had collected $1,127.40 when the suit was brought for the settlement of the estate of Sarah W. Kennedy. In the settlement of this estate, the question as to the validity of the assignment of the rent leases was raised, Eoline Howe and her two surviving children claiming that, under the terms and provisions of the will of Malvina Howe, the assignment of the rent leases was invalid and void. In the report of the referee in the main cause, which report was confirmed, it was recommended "that the bank be directed to pay to the clerk of this court the said sum of $1,127.40, and that the same amount be deducted from the balance found by the referee as due on

the note, and that proper order be passed by this Court to determine the rights of the estate to this fund. If all the parties necessary to determine this question are not before this Court, they should be brought in at once." This recommendation was acted upon; the fund is now in the hands of the clerk. of the court, increased by the amounts afterwards collected by the bank on the rent leases; a guardian *ad litem* was appointed for the children of Eoline Howe, and he and Eoline Howe filed an answer in the cause. The complaint, their answer, and agreed statement of facts and the testimony reported by the referee, are before me. Two questions raised by them are submitted to me:

*First.* Under the will of Malvina Howe, did James Arnold Howe and Eoline Howe have the power in law to make a valid assignment of the rent leases for the payment of their debts, or of the debts of James Arnold Howe?

*Second.* Have their two children, the infant defendants, any interest in this dispute? First, then: Was the assignment of the rent leases by James Arnold and Eoline Howe good and valid? The terms of the will of Malvina Howe make it clear that a life estate was bequeathed and devised to James A. and Eoline Howe. It is equally clear that it was the purpose and intention of the testatrix to prevent the alienation, or the encumbrance of the estate, or the assignment of the rents for the payment of the debts of the life tenants. She made it as plain as words could make it that she wished the life estate to be kept from any liability for the payment of their debts, and no doubt she believed she had accomplished the end desired. Her intention is sufficiently indicated in the third paragraph of the will, and emphatically repeated in the *sixth* paragraph as her "solemn desire." Is this provision of the will valid, or is it against law, and void? It cannot be doubted that a life estate was devised and bequeathed to James and Eoline. By the words of the will, there is a direct instruction that this life estate shall continue until their death, or, should James predecease Eoline, until her marrying again. Under

this provision, James and Eoline acquired a vested determinate interest in the estate then devised and bequeathed, with the present right to enjoyment in severalty. It needs not to say they had the right to enjoy the rents and profits. But it is contended that they could not lawfully assign the leases for rent in payment of, or as security for, their debts, or the debts of James, against the solemnly expressed and repeated desire of the testatrix. It is, in my opinion, well settled law that when a testator or donor gives a life estate in property, he may not by limitation or condition take away from it the usual incidents to property. One of the incidents to property, regarded in law as one of its essential attributes, is that it shall be subject to the payment of debts, and though the property be merely a life estate, it cannot be shorn of this attribute, even by the person whose will or deed creates it. This view is not in conflict with the recognized right of a testator or donor to give property out with the limitation or condition that it shall revert or pass to some third person upon the insolvency or bankruptcy of the first taker, or on an attempt of a creditor to subject it to the payment of debts. Such cases form no exception, because the determining event destroys the estate, it ceases to be the debtor's property. It cannot be made liable for the payment of his debts, for the very effort to subject it places it beyond the power and control of both the creditor and the debtor. It reverts to the original estate or passes to another taker. But when a testator or donor gives property to a man for his life, the effort to subject it to the payment of the life tenant's debts does not cause it to revert nor to pass. It remains his property, and clinging to it are the attributes of property, one of which, as has been shown, is the liability for the payment of the life tenant's debts. This essential, legal attribute cannot be taken from a life estate by any condition or limitation of the testator or donor. In *Branden* v. *Robinson*, 18 Ves., 429, Lord Chancellor Eldon said: "There is one obvious distinction between a disposition to a man until he becomes

a bankrupt and then over, and an attempt to give him property, and to prevent his creditors from obtaining any interest in it, though it is his. * * * There is no doubt that property may be given to a man until he shall become a bankrupt. It is equally clear, generally speaking, that if property be given to a man for his life, the donor cannot take away the incidents to a life estate." Quoted *Heath* v. *Bishop*, 4 Rich. Eq., 523. In *Hallet* v. *Thompson*, 5 Paige, 583, also quoted in *Heath* v. *Bishop*, *supra*, the Chancellor said: "As a general rule, it is contrary to sound public policy to permit a person to have the absolute and uncontrolled ownership of property for his own purposes, and to be able at the same time to keep it from his honest creditors." In a case somewhat analogous to this, *Verdier* v. *Youngblood*, Rich. Eq. Cas., 220, Chancellor DeSaussure said: "The question is whether the life estate of the defendant is subject to his debts, or, in other words, whether the proviso to the life estate is void. It is a principle of law, well settled both by reason and authority, that estates known to the law cannot be stripped of their essential attributes at the mere dictates of caprice. A proviso that a tenant in tail shall not suffer a recovery, or that a tenant in fee simple absolute shall not alien, has always been held contrary to law, and void." The case of *Heath* v. *Bishop*, *supra*, is instructive. Chancellor Dargan reviews several cases, English and American, and decides that "there are certain ideas that are inseparable from the institution of property; among the most prominent of which are the right of alienation, and its being subject to the payment of debts. In all cases like the present, the inquiry must be whether the debtor has a vested determinate interest in the equitable estate sought to be subjected, with the present right of enjoyment in severalty. If he has, the right of the creditor follows as a corollary in mathematical science does the main proposition. Under the above qualifications and conditions, the creditor is entitled to relief, and in some form or other the debtor's estate, be that more or less, should be disposed of

or sequestered for the satisfaction of his debt." And again, on page 58: "All the cases that bear an analogy to the case before the Court, go to show that where the beneficiary has a right to the present enjoyment in severalty of the benefits conferred upon him by the trust, the creditor has an equity that will not be disregarded by the Court, however elaborate may be the attempt to deprive such interest of the incidents of property and thus to exclude the claim of creditors." Applying these sound and well settled principles to this case, it is manifest that, in spite of her repeated "solemn desire" to do so, the testatrix, Malvina Howe, could not free the life estate she created from liability for payment of the life tenant's debts. Her desire and purposes to place it beyond the reach of creditors, was futile. So long as the life estate exists, this liability is an inseparable legal attribute. There being no limitation or restriction determining the estate on the insolvency or bankruptcy of the taker, or an attempt of a creditor to subject it to the payment of debts; but the estate being for life, to be determined only by the death of the life tenants, or, in the event of the predecease of the husband, by the marrying again of the widow, I am bound to hold, and do so adjudge and decree, that the proviso by which the testatrix, Malvina Howe, sought to preserve the life estate from liability for the payment of the life tenants' debts, is against law, repugnant and void. It follows of necessity, and I do so adjudge, that the assignment of the rent leases by James and Eoline Howe, the life tenants, was legal and valid. The admitted fact that Sarah W. Kennedy, first assignee, and the Bank of Florence, the second assignee, had notice of the terms and conditions of the will of Malvina Howe, cannot affect the result. It was not a question of knowledge, but a question of legal right to assign.

With regard to the second question submitted to me—whether or not the minor children of the life tenants have any interest in the contest—it is obvious that they have no interest in the property until after the death of their parents,

or the marrying again of the mother, should she be left a widow; they are, therefore, not necessary parties to this proceeding. Let plaintiffs' counsel prepare the proper order, in accordance with the views herein expressed, for the disposition of the rent leases and the fund in question, and I will sign the same, and order it to be filed as part of the decision.

From this decree the defendant, Eoline Howe, Ethel and Malvina Howe appeal.

*Mr. W. F. Clayton,* for appellants, cites: *Rule of construction of wills:* 2 Hill Eq., 488. *Will created trust in life tenant for his children:* 23 S. C., 235; 10 Rich. Eq., 295; 23 Eng. Ch. R., 445; 38 S. C., 453; 16 S. C., 548; 1 Rich. Eq., 330.

*Messrs. Boyd, Brown & Brunsons,* contra, cite: *Circuit decree must be sustained because not questioned in its application to legal estates:* 6 Rich. Eq., 302. *Beneficial interest of a cestui que trust is liable for the payment of his debts:* 5 Wall., 441; 4 Rich. Eq., 46; 32 Am. Dec., 242. *Courts will not establish trusts upon precatory and recommendatory words:* 1 Sim., 534; 2 DeS., 523; 2 Hill Ch., 490; 5 S. C., 460; 17 S. C., 50; 29 S. C., 57, 466; 41 S. C., 294; 46 S. C., 182; 10 Am. St. R., 56; 32 Ib., 856.

March 24, 1898. The opinion of the Court was delivered by

MR. JUSTICE POPE. An action to settle the estate of S. W. Kennedy, deceased, was pending between the plaintiffs and defendants (who are the respondents here), when there arose the necessity of making the defendants, appellants, parties in order to test the right of the estate of S. W. Kennedy to hold, as a part of said estate, certain rent liens, which had been assigned by James A. Howe and the defendant, Eoline Howe, to the said S. W. Kennedy, deceased, in her lifetime, to secure a debt to said S. W. Kennedy, owing by the said James A. Howe, for about $3,000. The rent

liens had been assigned by said S. W. Kennedy, in her life-
time, to the Bank of Florence, and the latter had collected
on said rent liens the sum of $1,120.40, and were about to
collect some $600 additional.   The ground upon which the
doubt to the right of S. W. Kennedy to claim the rent liens,
assigned to her by the said James A. Howe and Eoline, his
wife, arose from the peculiar provisions of the last will of
Mrs. Malvina F. Howe, deceased.   So, by an order of Court,
said Eoline Howe and her two children, Ethel Howe and
Malvina Howe, were made parties defendant, with leave to
contest this claim of the estate of S. W. Kennedy, deceased,
to such rent liens, by the addition of paragraphs 7 and 8 of
the complaint, and the service of summons upon them. By
their joint answer they alleged: "1st.  That all the issues in
the cause have been adjudicated except as to the matter con-
tained in the paragraphs 7 and 8 of the complaint herein.
2d.  The defendants admit the assignment of the rent leases
as mentioned in paragraph 7 of the complaint, and the col-
lection by the Bank of Florence of the sum of $1,120.40,
and that there is a further sum due thereon.   3d.  Further
answering, the defendants allege: that Malvina F. Howe de-
parted this life on the      day of      and left a last will and
testament, which has been duly probated; that the said will
was drawn up by W. A. Brunson, who, at the time of the
assignment of these leases, was president of the Bank of
Florence, and was also witnessed by himself and S. W. Ken-
nedy, the party to whom the leases were originally assigned,
and who was named as one of the trustees or executors of
the will of Malvina F. Howe.   4th.  That by the will of the
said Malvina F. Howe all of her property, real and personal,
was devised in trust to James A. Howe and Eoline Howe,
for the joint occupancy and use of themselves and their
children, of whom the defendants, Ethel and Malvina, are
the only surviving children.   5th.  That by the terms of the
will of Malvina F. Howe, it was provided that the lands
devised should neither be rented nor mortgaged nor sold
for the payment of any debts contracted by James A. Howe

or Eoline H. Howe. 6th. That the leases assigned, as stated in paragraph 7 of the complaint, were of lands belonging to the trust estate, and for a debt, as claimed, of James A. and Eoline H. Howe, and that S. W. Kennedy and the Bank of Florence took the assignment with the full knowledge of the trust. 7th. * * * 8th. That the Bank of Florence had the use of and possession of the $1,120.40, to wit: from December 31, 1893, $619; from December 31, 1894, $238.40; and from December 31, 1895, $270, and should account for interest and profit on same. 9th. That neither the estate of S. W. Kennedy nor the creditors thereof have any claim on this fund. Then follows a consequent prayer for relief.

To this answer the plaintiffs replied as follows: 1. They admit the allegations contained in the first and second paragraphs of the said answer. 2. They deny the allegations set forth in the ninth paragraph of the answer. 3. They deny each and every other allegation in said answer contained except so much thereof as may be hereinafter admitted. 4. Further answering, the plaintiffs say: that Malvina F. Howe departed this life, as stated in said answer, leaving a last will and testament, which has been duly probated, and that the said will was drawn by W. A. Brunson, who at the time of the assignment of the leases in question was president of the defendant, the Bank of Florence, and that the said W. A. Brunson and S. W. Kennedy, who assigned the said leases to the said bank, and to whom they had been assigned by James A. and Eoline Howe, were witnesses to the said will, and that the said S. W. Kennedy was named in the said will as an executor thereof, but never qualified as such. That the said Malvina F. Howe, with the exception of a small legacy to W. R. Howe, bequeathed and devised all her property, real and personal, to the plaintiff, James A. Howe, and to his wife, the defendant, Eoline Howe, for and during the terms of their natural lives; that after the death of both, to their lawful children, absolutely. That the said will indicated and declared that the purposes of said bequest and devise were for the benefit of the said James A. and

Eoline Howe and their children. That in the third clause of said will, after the said bequest and devise, there occurs the following proviso: "Provided, further, that the said estate so bequeathed and devised in said paragraphs, shall neither be rented, mortgaged or sold for the payment of any debts that the said James A. or the said Eoline may contract. And that it is my wish that the lands now rented out by me shall continue to be rented, if practicable, during the continuance of the said life estates of the said James A. and Eoline, for the benefit of themselves and their children." That the leases in question were assigned by the said James A. and Eoline Howe to the said S. W. Kennedy, and by her assigned to the Bank of Florence, to secure the payment of debts contracted by the said James A. Howe, or by him and his said wife, Eoline, for the use and benefit of themselves and children. That upon the question being made as to the rightfulness of the application of such monies as had been collected upon said leases to the claim of the Bank of Florence, upon recommendation of the referee in this case, it was ordered by the Court that the said monies be deposited with the clerk of this court, to abide the result of the decision of said question. And the said order provided that the said bank should have due protection in regard to the credit so withdrawn from the said claim. 5. Further replying, plaintiffs say: that the debts of the said testatrix now outstanding against the estate were almost entirely contracted to aid the said James A. and Eoline Howe in the support and maintenance of themselves and their children, and that it would be highly unjust to require her estate to pay the same, and at the same time to return to the said James A. and Eoline and their children the small amount so far contributed by the said James A. and Eoline for the protection and repayment of the said testatrix (meaning S. W. Kennedy). 6. Further replying, plaintiffs say: that the defendants, children of the said James A. and Eoline, have no legal or equitable right in the said leases during the lifetime of their parents, and are not entitled to claim

under the will of the said Malvina F. Howe.   The will of
Mrs. Malvina F. Howe was in these words: * * * "II. I
give and bequeath all my personal estate, chattels, and
effects, of whatsoever kind, which shall be at my death in
and about my dwelling house and premises, or that may
otherwise belong to me, to my beloved son, James Arnold
Howe, and his wife, Eoline, for and' during the term of
their natural lives, for the use and benefit of themselves
and their children; and after the death of both, to the law-
ful children of the said James Arnold, absolutely.   III. I
give and devise the tract of land upon which I reside, con-
sisting of 818 acres, known as the plantation of M. F. Howe,
with all income and all improvements thereon, and also all
other real property of which I may be seized and possessed
at my death, to·my said son, James Arnold Howe, and his
said wife, Eoline, for and during the term of their natural
lives only, with remainder over after their deaths to the
lawful children of the said James Arnold, in fee: provided,
that should my son, James Arnold, predecease his wife,
Eoline, it is my will that the estate given and devised to
her in this paragraph and paragraph II. next above shall
continue during her widowhood only; and should the said
Eoline marry again, it is my will that the estate given and
devised to her shall absolutely cease and determine, and
that the same shall thereafter vest immediately and abso-
lutely in the lawful children of the said James Arnold that
may be living at his death, and their heirs: provided, fur-
ther, that the said estate so bequeathed and devised in said
paragraphs shall neither be rented, mortgaged or sold for
the payment of any debts that the said James Arnold or
the said Eoline may contract; and it is my wish that the
lands now rented out by me shall continue to be rented, if
practicable, during the continuance of the said life estates
of the said James and Eoline, for the benefit of themselves
and children; and that all the personal property that during
the continuance of said life estates may perish, decay, and
wear away, or die, shall be, from time to time, replaced out

7—52

of the income of said rents. IV. I desire that my beloved son, William K. Howe, shall receive annually the sum of $25 out of the rents provided for in paragraph above until he shall receive the full sum of $100, the same to be paid by my executors. V. All the rest and residue of my estate, real, personal, and mixed, of which I shall be seized or possessed, or to which I shall be entitled at the time of my death, I give, bequeath, and devise to my beloved son, James Arnold, for and during the term of his natural life only, for the use and benefit and behoof of himself and his lawful children; and after his death, to his lawful children absolutely, subject to all conditions and limitations prescribed in paragraphs II. and III. above. VI. I here repeat, that it is my solemn desire that the dwelling house and tract of land herein given and devised shall be used as a home for my said son, James Arnold, and his wife and children, so long as he may live, according to all the conditions and limitations above prescribed; and that under no circumstances and on no account shall the above mentioned house, with lands attached and furniture and effects therein, be sold or mortgaged for any debts that my said son, James Arnold Howe, or his said wife, may ever contract." VII. Appoints executors, who are Smilie A. Gregg, James Arnold Howe, and Sarah W. Kennedy, or the survivors of them. These questions came on to be heard by his Honor, Judge Benet, at the September, 1896, term of the Court at Florence, on the pleadings and the following agreed statement of facts: "I. That Ethel and Malvina Howe are the only surviving children of James A. and Eoline Howe, and are now living, and have always lived, with their parents. II. That paragraph 3 of the answer is true. III. That James A. Howe has been engaged in farming, in running a cotton gin and mill on his place, and in merchandising. IV. That the leases assigned, as stated in paragraph 7 of the complaint, were lands devised under the will of Mrs. M. F. Howe; were so assigned to secure a debt of the said James A. Howe, amounting to $3,000—less $396, which is dis-

puted—and that S. W. Kennedy and the Bank of Florence took the assignment with notice of the will. V. That paragraph 8 of the answer is true, so far as regards the use and possession of the land fund therein stated, up to the date of the report of the referee; since that time, said fund has been constructively in the hands of the clerk of this court, though actually in the bank. VI. That $155.05 is the interest on $1,127.40 for the time stated in paragraph 8 of answer. VII. That there were other lands of said estate rented out, which were not assigned to Miss S. W. Kennedy or the Bank of Florence. VIII. That Mrs. Eoline H. Howe joined in the assignment of the rent leases mentioned in paragraph 7 of the complaint."

By the carefully prepared decree of Judge Benet, he held that the assigned leases were legal and valid in the hands of S. W. Kennedy, as well as in the hands of the Bank of Florence as her assignee, and, as a consequence, that the defendants, Eoline Howe and Ethel and Malvina Howe, were not entitled to the relief prayed for. Let the decree be reported. From this decree the defendants just named have appealed on the following grounds: "(1) That his Honor erred in holding that the will of Mrs. Malvina F. Howe created only a life estate for James and Eoline Howe. He should have held that it created a trust estate for the benefit of James A. and Eoline Howe and their children, the defendants, Ethel and Malvina Howe, during the life of the parents, and at their death, or remarriage of the mother, an estate in fee to the children. (2) His Honor erred in holding that the assignment of the rent leases was valid. He should have held that under the terms of the will of Mrs. Malvina F. Howe a trust was created, and under that trust the rents were reserved for the benefit of all the *cestuis que trustents*, and especially that same *should* be applied to the restoration of such property as should wear out, decay or die, and in no event could be used for the payment of the debts of James A. and Eoline Howe. (3) That his Honor erred in holding that the admitted fact that Sarah W. Ken-

nedy and the Bank of Florence had notice of the terms of the will of Mrs. Malvina F. Howe, at the time of the assignment of the rent leases, could not affect the result. He should have held that such knowledge fixed upon the Bank of Florence liability for all the funds collected under the assigned leases, with interest or profit. (4) His Honor erred in holding that the infant defendants had no interest in this contest, and were not necessary parties. He should have held that by the terms of the will of Mrs. Malvina F. Howe, they were entitled to the use and benefit with their parents of all the property, real and personal, during the lifetime of their parents, and especially were they entitled with their parents to a home on the lands during the lifetime of the parents, and at their deaths to the fee, and were necessary and proper parties to this action. (5) His Honor erred in directing plaintiffs' attorneys to prepare an order for the disposition of the leases and the distribution of the funds in accordance with the views expressed in his decree. He should have directed the custodian of the fund to turn the same with the leases to the executors of the will of Mrs. Malvina F. Howe for the use and benefit of the defendants. (6) His Honor erred in holding that the life estate was enjoyable in severalty, and having failed to notice the point made by the defendants, that even if this were only a life estate, that it is joint, and the interest of each unascertainable and not severable, and as the wife signed merely as the indorser or surety for her husband, her act was beyond her contractual power and void, and the assignment by the husband alone was invalid. This Court is asked to entertain and consider the same."

It is evident that if James A. Howe and Eoline Howe, his wife, took life estates in the lands devised by the will of Mrs. Malvina F. Howe, and there were no trusts created under said will attaching their children, Ethel and Malvina Howe, to said life estate, it was not error in the Circuit Judge to hold, as he is complained of holding under these grounds of appeal. So that the primary question

here is to determine what kind of an estate did James A. Howe and his wife, Eoline, take under this will? The Circuit Judge held, first, that they took life estates pure and simple, under his construction of the terms of the will; second, that if the testatrix intended by the terms employed in her will to prevent such life estates from liability to creditors, that such intention could not be effectuated. He refers, with great confidence, to the discussion of this subject by Chancellor Dargan, in' the case of *Heath* v. *Bishop*, 4 Rich Eq., 46, where the doctrine is affirmed that when a life estate is created under a deed or will, it is not in the power of the grantor or devisor to so hedge about such life estate with provisions, conditions or limitations that it will not be reached by creditors, unless there is a forfeiture of said life estate in the event of an attempt by creditors to subject it to their demands in law or in equity, in the event of insolvency or bankruptcy. Chancellor Dargan reviews the authorities, both English and American, in support of this proposition, citing *Brandon* v. *Robinson*, 18 Vesey, 429; *Piercy* v. *Robert*, 1 Myl. & K., 4; *Graves* v. *Dolphin*, 1 Simmons, 66; *Greene* v. *Spicer*, 1 Russ. & M., 395; *Hallett* v. *Thompson*, 5 Paige, 583. It will, therefore, be necessary for me to construe the will in question, to determine whether, by its terms, a life estate pure and simple was intended by the testatrix to her son, James A., and Eoline, his wife, or whether the life estate was so created, with a *trust* for their children and themselves on the real and personal property? The will was prepared by a lawyer, and the testatrix declared that she intended her bequests and devises in favor of the said James A. and Eoline, his wife, to go to them as life tenants. This expression, "life tenants," is repeated again and again. But I apprehend that this is not the crucial test of the will, so far as the creation of these life estates is concerned. I apprehend that a trust may be attached to a life estate which would prevent creditors of the life tenant from interfering with such life estate. Was such trust estate created in this instance? The funda-

mental idea of a life trust in property is that a legal estate
to said property is invested in some person for the benefit
of another. It has been always difficult for me to appreci-
ate the view that a life estate may be vested in A, upon the
trust that A shall have the benefit of such property. But
cannot the legal estate to certain property be conveyed to A,
with a trust that all the benefits which shall arise from said
property shall accrue to and be enjoyed by A and certain other
persons named during the lifetime of A? If such latter can
be effectuated by a will, need there be some provision in
the will creating such life estate and trust in the property
conveyed for life other and beyond the insolvency or bank-
ruptcy of the life tenant, who is also one of the *cestuis que
trustent* in such property; such, for instance, as a specific
piece of land on which the dwelling house is located, and
in such dwelling house a home for certain persons, includ-
ing the life tenant, is provided, which would effectually, in
law or in equity, prevent a creditor of the life tenant from
subjecting his share of said property to the payment of his
debts? The language of Mrs. Malvina F. Howe's will is
very significant, for, in the second clause, where she be-
queaths all her personal estate, chattels, and effects of
whatsoever kind which shall be, at her death, in and about
her dwelling house and premises, or that may otherwise
belong to her, to her son James, and Eoline, his wife,
for and during their natural lives, *for the use and bene-
fit of themselves and their children.* While in the third
clause she devises the tract containing 818 acres, whereon
was her family residence, with all the income and improve-
ments thereon, and also all other real estate of which she
might be seized at her death, to her son James, and Eoline,
his wife, for and during the terms of their natural lives,
with the proviso that her lands then rented out should con-
tinue to be rented during the said life estates; *for the benefit
of themselves and children,* and *that all the personal pro-
perty that, during the continuance of the life estates, which
may perish, decay, wear away or die, shall be, from time*

*to time, replaced out of the income of said rents.* In the
fifth clause the testatrix again devises to her son James all
the rest and residue of her estate, for and during the term
of his natural life only, for the *use and benefit and behoof
of himself and his lawful children,* subject to all the condi-
tions and limitations in paragraphs two and three of the
will. Lastly, in the sixth clause, she repeats her desire
that the dwelling house and tract of land devised in the
third paragraph to her son James, and Eoline, his wife, for
life, shall *be used as a home for James, Eoline, and children,*
and that on no account shall the same be sold or mortgaged
for any debts of James or Eoline. Is it not apparent from
reading this language, that Mrs. Howe intended the title
in the lands and personalty to be vested, for their lifetime,
in James and Eoline, his wife, for the use, benefit, and be-
hoof of themselves and their children? I am not, therefore,
prepared to go to the full length to which the Circuit Judge
has gone; for while, as I shall presently show, I do not re-
gard the position of the defendants touching these rent
leases tenable, yet I am unwilling to assent to a construc-
tion of this will which may hereafter imperil the rights of
these tender children. I think a fair construction of the
will puts the title in the life tenants, imposed with a quasi
trust for the children, for a home with their parents, and,
also, a maintenance from the products of the same if culti-
vated, or from rents of the lands if they are leased to others.
But I must agree with the Circuit Judge that the leases
now before the Court (and this includes the $1,220.40 now
in Court), should be applied to the debt of James to the es-
tate of Miss Sarah W. Kennedy, for these reasons: First.
There is nothing shown before this Court by which it is
established that James and Eoline, his wife, do not use
Mrs. Malvina F. Howe's dwelling house and 818 acres of
land attached, as a home for themselves and their children,
nor that they fail to maintain the children. Second. When
lands are conveyed to a life tenant, with the direction that
the same is for the use of the life tenant, his wife and chil-

dren, or that the same is for the benefit of the life tenant, his wife and children, or that the same is to furnish a home for himself, his wife and children, the life tenant takes the rents and profits, though the life tenant is a trustee as to the corpus, provided he furnishes the home, or maintenance, or whatever of that character the will may require. As is said in ·note 1 to page *66 of Hill on Trustees: "But in these cases, when the interest of legacies or rents, or the proceeds of shares, are to be applied by the parent to the support and maintenance of the children, though a trustee as to the *corpus*, the parent takes the interest, &c., subject to no account, provided he discharges the duty of maintaining and educating. *Brown* v. *Paul*, 1 Simons Ch. 2 Reports (new series), 92; *Hadow* v. *Hadow*, 9 Simons Ch. Reports, 438." I think, also, the children of James and Eoline were proper parties to these proceedings, as well as the wife of James A. Howe.

Both the life tenants having joined in the assignment, I see no reason, under the proofs, why her act should not stand. I think the decree ought to be affirmed, with the restrictions herein contained.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

Mr. Chief Justice McIver and Justices Gary and Jones concur in the result.