HOLMES v. PICKETT.

1. CONVERSION.—Where an executor is clothed with the power of conversion of property at his own discretion, there can be no conversion until it is actually made; but when once made, the property partakes of the nature of that into which it is converted by the executor.

2. WILL—USES—STATUTE OF USES.—This will construed to devolve no duties upon the trustee, and, therefore, the statute executed the use.

Before WITHERSPOON, J., Charleston, April, 1897. Reversed.

Action in partition by Wm. E. Holmes, trustee, against M. P. Pickett, the heir at law and administrator of Eri H. Jackson, and the heirs at law of Agnes Chapeau. The report of Master Sass states the facts as follows:

I find the following facts: That Ada Clay, otherwise known as Ada Clark, late of Charleston, in the county and State aforesaid, died in 1886, leaving her last will and testament, which was duly admitted to probate on the 29th of November, 1886, wherein, *inter alia*, she devised as follaws (fully quoted in opinion). Edwin R. White duly qualified as executor of the will. The property of the estate of Ada Clay at the time of her death consisted wholly of personalty, being cash in the Germania Savings Bank and a lot of furniture. Subsequently, namely, on the 19th of February, 1887, Edwin R. White, executor, invested a portion of the said estate, to wit: the sum of $700, in the purchase of one undivided fourth part or interest in the premises on Meeting street, in this city, described in the pleadings, and took the title to himself as executor of the last will and testament of Ada Clay, otherwise known as Ada Clark, subject to all the trusts, provisions and limitations of the last will and testament of the said Ada Clay. Edwin R. White subsequently died, and administration, *cum testamento annexo, de bonis non*, of the estate of Ada Clay was granted to W. E. Holmes, and under proceedings in the case of W. E. Holmes, administrator, *cum testamento annexo, de bonis non*, against Robert Graham *et al.*, the said W. E. Holmes was appointed trustee in the room and place of the deceased trustee, Edwin R. White, upon filing his bond in the sum of $11,431.94, and took possession of the trust estate. The real estate in Meeting street, described in the complaint, was owned as follows: One undivided half thereof was owned by Eri H. Jackson, one undivided fourth part by Agnes Chapeau, and the other undivided fourth was held by W. E. Holmes,

trustee, under the will of Ada Clay as aforesaid. On the 17th of October, 1894, Eri H. Jackson, one of the tenants in common, filed his complaint in the Court of Common Pleas for Charleston County *vs.* Agnes Chapeau, Robert Graham, Robert C. Graham, and J. L. Ancrum, defendants, alleging that the plaintiff and the said defendants own and possess as tenants in common the said real estate in Meeting street above referred to; that the plaintiff has an estate of inheritance of one undivided half interest in the fee thereof; that the defendant, Robert Graham, has a life estate in one undivided fourth interest in the same, with remainder in fee to his son, the defendant, Robert C. Graham; that the defendant, Agnes Chapeau, has one undivided fourth interest in the fee thereof. That the plaintiff owns no other land in this State in common with the said defendants. That the defendant, J. L. Ancrum, holds a mortgage upon the interest of Agnes Chapeau in the said property.

Wherefore, the plaintiff asks judgment for a partition and division of the said premises according to the respective rights of the said parties, or if a partition could not be had without material injury to those rights, then for a sale of the premises and a division of the proceeds among the parties. The defendants were duly served and answered; Robert Graham filing a sworn answer admitting the allegations of the plaintiff concerning himself; and the defendant, Robert C. Graham, who was a minor, being properly served, and answering the complaint by his guardian *ad litem* duly appointed. On the 25th of January, 1895, a decree of sale was made confirming the master's report, and the said property was sold by Master Whaley at public aution, after due advertisement, and at such sale was knocked down to M. P. Pickett and E. H. Jackson for $3,120, they being at that price the highest bidders thereof. The said purchasers complied with their said bid and received the master's conveyance for the said premises. It appears by the report of sales of Master Whaley that he distributed the

18—51

purchase money of the said premises in accordance with
the decree, and now holds the sum of $700, representing the
one-fourth interest in the said property held under the trust
of the will of Ada Clay, which amount is subject to the
further order of the Court in that case. The purchasers,
Jackson and Pickett, went into possession of the real estate,
which was at the time of the purchase in a dilapidated con-
dition, and have expended in repairs to the property the
sum of $3,463.13.

The present action is brought by W. E. Holmes, trustee,
under the will of Ada Clay, *alias* Ada Clark, *v.* E. H. Jack-
son, Agnes Chapeau, Robert C. Graham, M. P. Pickett, and
Robert Graham. The complaint sets out the will of Ada
Clay, the purchase of the undivided fourth interest in this
real estate by White, trustee, the death of White, and the
appointment of the plaintiff in his room and place as trus-
tee, and alleges that E. H. Jackson and Agnes Chapeau
have an interest in the real estate as cotenants of the
plaintiff, and that the defendants, Jackson and Pickett,
have recently gone into and taken possession of the whole
of the said premises, to the exclusion of the plaintiff, and
have committed waste and other damage to the property
by defacing, breaking, tearing down and otherwise injuring
said premises. Wherefore, the plaintiff prays for a parti-
tion, or sale of the said premises for the purpose of parti-
tion, and for an account of the said Jackson and Pickett
for rents and profits and of the waste and damage commit-
ted by them as aforesaid.

The answer of the defendants, Jackson and Pickett, sets
up the proceedings in the case of *E. H. Jackson* v. *Agnes
Chapeau et al.*, and admits that they are in exclusive pos-
session of the premises described in the complaint under
and by virtue of the decree and sale in said proceedings,
and alleges that the buildings on said premises have be-
come dilapidated and untenantable, and that they are re-
pairing and improving the same, as they have a right to do.

The defendant, Robert Graham, answering the com-

plaint, alleges that any interest that he may have in the property described in the complaint is derived from the will of Ada Clay, as set forth in paragraph 1 in the complaint; that on information and belief he admits all and singular the other allegations of the complaint, and submits his rights to the Court.

The master held that the legal title was in the trustee, but that the partition suit had divested the devisees of this title, and dismissed the complaint.

Upon exceptions, the Circuit Judge affirmed the first position, but reversed the second and ordered partition. From this judgment defendants, Pickett and heirs at law of Jackson, appeal.

*Mr. J. N. Nathans,* for appellant, cites: *Equitable conversion:* 1 DeS., 173; Dud. Eq., 212; 8 Rich. Eq., 79, 291; 25 S. C., 154. *Conversion at discretion of executor or trustee:* N. J. Eq., 377; 75 Pa. St., 87; *White v. Howard,* 46 N. Y., 104 N. C., 626 (10 S. E. R., 704); 45 Pa. St., 84; 97 Pa. St., 42; Law Rep., 18 Eq. Cases, 192. *Equitable title passes by partition:* Rich. Eq. Cases, 209; 1 Hill Ch., 335; 5 Rich. Eq., 541; 41 Mo., 447; 2 Rich. L., 593. *Remainderman here bound by partition:* 3 S. C., 319; 13 S. C., 93; 5 Rich. Eq., 541; 6 Paige, 290.

*Mr. W. St. Julien Jervey,* contra, cites: *Trend of construction is to take use out of statute:* 4 Strob. Eq., 75; 46 S. C., 230, 522. *Personal property not embraced in statute:* Speers Eq., 583; 6 Rich., 315; 21 S. C., 41; 31 S. C., 13. *Land purchased by trustee is temporary investment:* 2 Pa. St., 467; 3 Rawles, 55; 23 S. W., 667; 11 S. C., 416. *Equitable conversion is to preserve estate:* 126 Pa. St., 541; 137 Pa. St., 454; 149 Pa. St., 7; 74 Pa. St., 391; 42 Pa. St., 84; 10 Barr. Pa. St., 131; 97 Pa. St., 45; 45 Pa. St., 84. *No voluntary act of trustee can defeat the estate:* 25 S. C., 389; 48 Mo. Ap., 582; 25 Pac., 22; 20 At., 343. *Tenant in common holding legal title necessary party:* 18 S. C., 52; 20 S. C., 71; 23 S. C., 291.

Feb. 15, 1898. The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER. This action was origi-
nally commenced by the plaintiff against Eri H. Jackson,
M. P. Pickett, Agnes Chapeau, Robert Graham, and Robert'
C. Graham, for a partition of certain real estate in the city
of Charleston, to wit: a lot on Meeting street, described in
the complaint, upon the theory that the plaintiff, as trus-
tee, held the legal 'title to one undivided fourth part of said
lot, the said Agnes Chapeau one other undivided fourth
part, and the said Eri H. Jackson the remaining two fourth
parts of the said lot. The complaint also claimed an ac-
count from the said Eri H. Jackson and the defendant, M.
P. Pickett, who, it was alleged, were in possession of the
lot, for the rents and profits thereof, as well as for waste
committed by them on the said premises. The said Eri
H. Jackson and the said Agnes Chapeau having died intes-
tate, after the commencement of the action, their heirs at
law have, by order of the Court, been substituted in their
places as parties defendant. The facts out of which this.
controversy arises have been so fully and clearly stated in
the master's report, which should be incorporated in the
report of this case, that any restatement of them is unne-
cessary.

The clause of the will of Ada Clay, under which the
legal questions presented arise, reads as follows: "All the
rest, residue, and remainder of my property, both real and
personal, I give, devise and bequeath to Edwin R. White,
of the city of Charleston, in trust for my friend, Robert
Graham, he, the said Robert Graham, only to hold a life
interest in same; to receive the rents, interests, dividends,
income emoluments, etc., during the term of his natural
life, and after the death of the said Robert Graham, the
property, with its accumulations, both real and personal, I
give, devise and bequeath to his son, Robert C. Graham, to
him and his heirs, executors, administrators and assigns,
forever, freed and forever discharged from all further
trusts. Lastly, I nominate, constitute and appoint Edwin

R. White my sole executor, with full power and authority to sell all and singular my estate, both real and personal, at private or public sale, and to reinvest the proceeds as in his judgment he may think proper."

Inasmuch as the property left by the testatrix at the time of her death consisted wholly of personalty, the first question which arises is, whether when the executor, in pursuance of the authority conferred upon him by the will, laid out seven hundred dollars of the personal property of the testatrix in the purchase of one undivided fourth part of the lot, of which partition is sought, the property so purchased thereby became realty, and subject to all the incidents belonging to that species of property, or whether, in the eye of the law, it still retained the character of personalty. It seems to us that both the master and the Circuit Judge, in considering this question, have ignored the distinction between equitable conversion and actual conversion, made by the authority of the testatrix. In 6 Am. and Eng. Ency. of Law, 664, it is said: "Equitable conversion is the notional alteration of land into money, or money into land, in accordance with a direction to that effect of a testator or settler, and in pursuance of the equitable doctrine that what is agreed or imperatively directed to be done is already done, or as good as done." So in 3 Pom. Eq. Jur., in sections 1159, *et seq.*, it is shown that the doctrine of equitable conversion grows out of and is dependent upon the fundamental principle that equity regards that as done which ought to be done. Hence arises the well settled rule, illustrated by the authorities cited in respondent's brief, that in order to work such a conversion, there must be clear and imperative direction in the will, or other instrument under which the question arises, that the property *shall* be converted. But this rule only applies *"while the property is yet actually unchanged in form."* See 3 Pom. Eq. Jur., sec. 1160, where the words just quoted are italicized by that distinguished author. For, as said in note 2 to that section,

upon the authority of a number of cases there cited: "Whenever trustees are clothed with a discretion and exercise it, and thus actually make a conversion, the property will in general pass in the nature and form to which they have converted it." In a note to 6 Ency. of Law, on page 665, it is said, quoting from the opinion of Durfee, C. J., in *King* v. *King*, 13 R. I. Rep., 501, that, if the testator intended simply to give the executor power to convert, leaving it discretionary with the executor to convert it or not, the conversion will depend on the will or discretion of the executor or trustees, and will not be regarded as consummated in law till it is consummated in fact." And again in the same note, on page 667 of the same volume, it is said, upon the authority of *Van Vechten* v. *Keator*, 63 N. Y., 52: "If the trustees, having been clothed with a discretion, have actually exercised it, the property has generally been held to be converted." This distinction between equitable conversion and actual conversion, made under authority conferred by the will, is founded upon reason as well as authority. For as equitable conversion grows out of, and is based upon, the maxim that equity regards that as done which *ought* to have been done, it necessarily follows that some plain and imperative duty must have been imposed upon the executor by the will, before the doctrine of equitable conversion can arise, for otherwise there would be nothing that *ought* to have been done. Hence, where there is mere discretion on the part of the executor to change the form of the property as his own judgment may dictate, there can be no conversion until it is actually made. But when the form of the property is, in fact, changed by the executor, in pursuance of the authority conferred upon him by the will, then the conversion is consummated by virtue of the will of the testator, and must, in law, be regarded as it is in fact, of the nature of that into which it has been changed. There can be no doubt that a testator may, in his lifetime, make any change in the nature of his own property, either by his own act, or by that of a

duly authorized agent, and when the change is actually effected, the property would necessarily assume the nature and form of the property into which it was thus changed. Upon the same principle, we see no reason why a testator may not invest his executor with discretionary authority to change the form of his property from that of personalty into that of realty, or *vice versa*, and when such discretion has been exercised, the property will assume the form, in the eye of the law, and be subject to all the incidents belonging to the nature of the property into which it has been changed by the authority of the testator.

In addition to this, it seems to us that the testatrix, by the language which she used in the clause of her will above quoted, manifestly indicated that she contemplated the very state of things which has occurred; for, in speaking of her property, she speaks of it three times as "both *real* and personal;" she uses not only the words "give" and "bequeath," but also the word "devise"—appropriate to the disposition of realty and not appropriate to personalty; and she also uses the word "heirs," as well as executors and administrators, in the limitation over to the remainderman, applicable to realty and not to personalty; and when it is noticed that the power to change the form of her property is conferred, *not* upon the trustee, but upon the executor, the implication is strong that she expected and intended that her executor, in settling up her estate, before turning it over to the trustee, might, and probably would, find it necessary or expedient to change the form of her property; and as, under the authority conferred upon him, the executor might change a part, if not the whole, of her property, which was wholly personal at the time of her death—the time when the will must be regarded as speaking—into realty; and hence, in disposing of the same, she used words applicable to both species—real and personal. We are, therefore, of the opinion that the one undivided fourth part of the lot in question, which was purchased by the executor with the funds of the testatrix, must be regarded in

law, as it is in fact, real estate, and subject to all the incidents belonging to that species of property.

The next inquiry is, whether the statute executed the use, and thereby the legal title, to the property in question passed to Robert Graham for life, and after his death to his son, Robert C. Graham, in fee. Upon this question we do not see how any doubt can be entertained. It is well settled that the true test as to whether the statute of uses applies, is to inquire whether the trustee has some duty to perform, for the proper performance of which it is necessary that the legal estate shall be in him. If so, the use is not executed; but if not, then the statute does apply and the use is executed. See *McNish* v. *Guerard*, 4 Strob. Eq., 66; *Bristow* v. *McCall*, 16 S. C., 545; *Howard* v. *Henderson*, 18 S. C., 184; *Bowen* v. *Humphreys*, 24 S. C., 452; *Wieters* v. *Timmons*, 25 S. C., 488; *Ayer* v. *Ritter*, 29 S. C., 135. Our next inquiry, therefore, is whether, by the terms of the clause of the will above quoted, any duty was imposed upon the trustee, for the proper performance of which it was necessary that the legal estate should be in him. A careful consideration of the terms of that clause fails to disclose any such duty imposed upon the trustee. Indeed, we are unable to perceive that he was required to do anything whatever. He was not required to receive and pay over to the life tenant the rents and income of the property. On the contrary, by the express terms of the clause, the life tenant was himself empowered to receive such rents and income during the term of his natural life. Nor was the trustee required to convey the property to the remainderman upon the termination of the life estate. Indeed, as we have said, we do not see that the trustee was required to do anything whatever. It follows necessarily that the statute executed the use, and the legal title passed to Robert Graham for life, and after his death to his son, Robert C. Graham, in fee; and as both of them were parties to the proceedings mentioned in the master's report, under which Pickett and

Jackson bought the property in question, these purchasers acquired a good title.

This being our conclusion, it is unnecessary to consider the other questions discussed in the arguments, as, under the view which we have adopted, they become purely speculative.

The judgment of this Court is, that the judgment of the Circuit Court be reversed, and the complaint dismissed.