### SPANN v. CARSON
(116 S. E., X)⁴²¹

1. DOWER—WILLS—DEVISE SOLELY TO HOLD LEGAL TITLE HELD NOT TO CREATE VALID TRUST, SO THAT WIDOW OF BENEFICIARY WAS ENTITLED TO DOWER.—A clause in a will providing, "All the estate, real and personal given . . . by this will I wish held in trust by . . . R. so that the . . . shares allotted to my son J. shall not be subject to his disposal or liable for his debts," no duty being imposed upon the Trustee, except to hold the legal title so that the property shall not be subject to the disposal of the son nor liable for his debts, was insufficient to create a valid trust, but was executed by the statute, and passed a legal estate to the son, who was entitled to the sole possession, and whose widow was entitled to dower therein.

---

NOTE: On law governing validity of trust in real property, see notes in 13 L. R. A., 212; 3 L. R. A. (N. S.), 668; 40 L. R. A. (N. S.), 1215; L. R. A. 1916A, 1044, and L. R. A. 1918E, 571.

SPENDTHRIFT TRUSTS: 2 L. R. A. (N. S.), 443.

2. Trusts—When Statute of Uses Does Not Execute Generally.— Where the intention is that the estate shall not be executed in the *cestui que* use, and any object is to be effected by its remaining in the Trustee, it shall not be executed.

3. Wills—Clause Held to Create Executory Devise, Not Estate in Remainder.—A will devised property to a son and further provided that, "should any of my children die and not have a child or children, who shall marry or attain the age of twenty-one years, all the estate, real and personal, given them by this will I wish equally divided between my surviving children and my two grandchildren," etc., and in a proceeding for dower by the wife of the deceased son *held* the interest of the children as to the interest devised to the son was not an estate in remainder, vested or contingent, but an executory devise taking effect upon the death of the son under the circumstances mentioned, regardless of any acts of a Trustee under the will.

4. Trusts—Estate in Remainder Not Subject to be Defeated by Feoffment With Livery of Seizin, and no Trustee Required to Protect Same.—Since the Act of 1883 makes it impossible to defeat an estate in remainder by any deed of feoffment with livery of seizin, a life tenant could not destroy contingent remainders, and there is no peril of destruction that requires a Trustee.

5. Trusts—Statute Permitting Execution on Estate Held in Trust Contemplates Simple Trust for Benefit of Debtor.—Civ. Code 1912, § 3697, providing what estates held in trust may be sold under execution issued against the beneficiary, contemplates only a case where the trust is a clear and simple one for the benefit of the debtor.

6. Trusts—Spendthrift Trust Should be Upheld.—A spendthrift trust should be upheld, not because the law is concerned to keep the donee from wasting it, but mainly because it is concerned in protecting the donor's right of property, the bounty of which the donor has the power to control as an incident of his proprietary right.

7. Trusts—Existing or Subsequent Creditors of Donee of Spendthrift Trust Cannot Complain Thereof.—An existing creditor has no right to complain if his debtor should acquire a certain interest as a result of a spendthrift trust, nor the subsequent creditor, where he has extended credit with full knowledge of the debtor's protected title.

8. Trusts—Validity of Spendthrift Trusts Confined to Equitable Life Estates.—Spendthrift trusts are confined to equitable life estates or to the income from certain property or funds; they cannot exist in reference to equitable fee-simple estates.

9. DOWER—TRUSTS—CLAUSE CREATING SPENDTHRIFT TRUST IN EQUITABLE FEE-SIMPLE ESTATE HELD EXECUTED BY STATUTE OF USES, SO THAT WIDOW OF BENEFICIARY WAS ENTITLED TO DOWER.—A will provided, "I give to my son J., the plantation where I now live," etc., and further provided, "All the estate, real and personal given . . . by this will I wish held in trust by . . . R., so that the . . . shares allotted to my son J. shall not be subject to his disposal or liable for his debts." *Held,* though the specific instructions to the Trustee were sufficient to create a trust, the disposition of the property to the son, being an equitable fee-simple estate, the trust was void, not only as to the estate, but to the income thereof as well, and, being void, the statute executed it, so that the son acquired a legal estate, entitling his widow to dower therein.

Before SHIPP, J., Sumter, March, 1922. Affirmed.

Action by Mattie S. Spann against Harriet S. Carson and others to have dower set aside. Decree for plaintiff and defendants appeal.

The following is the decree of the Court below:

This is an action for dower. The plaintiff, Mrs. Mattie S. Spann, and the late Dr. James C. Spann were lawfully married in the year of 1871, and lived together until his death on the 31st day of October, 1920. Dr. Spann devised to his widow, the plaintiff herein, all of his estate, real and personal, during her lifetime in lieu of dower, but the plaintiff elected to take dower instead, and, on the 15th day of May, 1921, this cause was commenced.

At the time of his death Dr. Spann was seized in fee-simple of certain lands, but since this action was started dower has been set off to the plaintiff, with the consent of all parties in interest, in so far as this portion of his estate is concerned. The remainder of his lands, however, were received under the terms of the will of his father, Lawrence M. Spann, who died in 1874. Both of said wills, having been admitted to probate in the office of the Judge of Probate for Sumter County, are of record in the said office. The terms of the will of the late Lawrence M. Spann affecting the issue in this matter are as follows:

The first clause of said will is as follows: "I give to my son James the plantation where I now live, including the Murray tract, the Graham tract and the few acres of land adjoining which I bought from Frierson and also the two small places at Providence that I bought from Mr. J. K. Pollard, containing about ninety or one hundred acres; also one-fourth of my mill tract near Levi Burkett's.

The sixth clause of said will is as follows: "The balance of my estate, real and personal, I give one-fifth to my son James, one-fifth to my daughter Bettie, one-fifth to my daughter Harriet, one-fifth to my daughter Ella and the other fifth to my two grandchildren Lawrence and Anna Carson."

The sixteenth clause of said will is as follows: "All the estate, real and personal, given or intended to be given hereafter by this will, I wish held in trust by my friend William J. Reynolds so that the portions or shares allotted to my son James shall not be subject to his disposal or liable for his debts and the proportions or shares allotted to my daughters shall not be subject to their disposal or liable for their own debts or the debts of their present or any future husbands."

The seventeenth clause of said will is as follows: "Should any of my children die and not have a child or children, who shall marry or attain the age of twenty-one years, all the estate, real and personal, given them by this will I wish equally divided between my surviving children and my two grandchildren, Lawrence and Anna Carson, who shall only be entitled to one child's portion."

The question to be decided by this Court is whether or not the plaintiff is dowable in lands which passed to her husband, Dr. James C. Spann, under the aforesaid terms of the will of the late Lawrence M. Spann.

The plaintiff contends that, even though her husband's estate expired by his death without issue as provided under the terms of his father's will, her right to dower

therein continues at common law and by the law of the
State of South Carolina. In *Milledge v. Lamar,* 4 Desaus.,
617, decided in South Carolina as early as 1816, the same
question was adjudicated. In that case lands were given
by deed, confirmed by will, to Thomas Lamar and his heirs,
"without any condition, except that should the said Thomas
die without any heirs of his body begotten, then, and in that
case, the whole of the then remaining property should be
equally divided among the children of his brothers."
Thomas Lamar died without heirs of his body, but leaving
a widow, who instituted proceedings for dower. Her
claim was resisted upon the ground, mainly, that the estate
of the husband was a fee-simple conditional, of which, as it
was contended, a wife is not dowable. But the Court
thought otherwise; Dessausure, Chancellor, delivering the
opinion. "To the claim of dower," he observed, "it was
objected, that Thomas had not such an inheritable interest
in the lands as entitled his widow to dower. But I am of
opinion he had. The limitation is to him and to his heirs;
but, if he died without an heir of his body begotten, then
over to the brother's children. If he had had an heir of
his body, he would have inherited. Now the text of Little-
ton is express that, where a woman taketh a husband seized
of such an estate, intenements, etc., so that any issue she
might have by him may by possibility inherit the said tene-
ments, of such estate as the husband hath, she shall have
her dower. * * * See Litt., § 53. As then the issue Mrs.
Lamar might have had by the said Thomas might have in-
herited, she is entitled to dower. The widow of a tenant
in tail, it was conceded, would be entitled to dower. And
so, in my judgment, is the widow of a tenant in fee con-
ditional at common law." The instrument of gift was
treated by the Court as a will.

The Supreme Court of our State in a comparatively re-
cent case has defined dower in these words: "Dower at com-
mon law is an estate for life to which the wife is entitled,

on the death of her husband, in the third part of the legal estate of inheritance in lands and tenements of which the husband was seized in deed or in law, in fee-simple or in fee tail, at any time during coverture, and to any issue which the wife might by any possibility have been heir." See *Boykin v. Springs,* 66 S. C., 362, 370; 44 S. E., 934, 936.

In regard to the trust feature of the will of Lawrence M. Spann as set forth in the sixteenth clause thereof, it is clear that the trustee was imposed with the sole duties of holding the legal title to the property passing under said will to James C. Spann in order that the said beneficiary could not convey his interest in the said estate, and so that his creditors could not subject his interest to the payment of his debts. Now, it is not here contended that a widow is dowable in a trust estate, for without a Statute to the effect the authorities are unanimous in holding the opposite view. But, as was attempted in the instant case, a trust created for the purpose of preventing alienation by *cestui que* trust and subjection of his estate to his debts is dry and inactive, and therefore executed by the Statute of this State. See 1 Code of S. C., 1912, page 1016, § 3673.

This question is very ably treated by opinion from our Supreme Court in the case of *Heath v. Bishop,* 4 Rich. Eq., 46; 55 Am. Dec., 654, and so far as I am able to find is the law in this State at the present time. The case of *Young v. McNeill,* 78 S. C., 143; 59 S. E., 986, may be distinguished from the case at bar, because of the Statute which was passed in this State in 1883, providing that no estate in remainder, vested or contingent, shall be defeated by any deed of feoffment with livery of seizin, thereby rendering the trust passive as it eliminated the only duty left for the trustee to perform.

The plaintiff contends that in view of the following facts she is entitled to dower in so much of the land involved herein as passes to Lawrence M. Carson and Mrs. Annie

E. Strohecker. These parties conveyed by their deeds to Dr. James C. Spann, husband of the plaintiff herein, during coverture, all their interest and expectancy in the said lands which passed to them under the terms of the will of Lawrence M. Spann. The widow claims that by such conveyance Dr. Spann held in fee simple during coverture one-half of the lands passing to him by the will of his father, Lawrence M. Spann, from time of said conveyance. It is urged that as contingent remaindermen Lawrence M. Carson and Annie Strohecker had the right to convey their interest in their grandfather's estate to James C. Spann, as held in *Earle v. Maxwell,* 86 S. C., 1; 67 S. E., 962; 138 Am. St. Rep., 1012.

For the reasons above stated I am of the opinion that the plaintiff, Mrs. Mattie S. Spann, is entitled to dower in the lands passing to her husband under the will of his father the late Lawrence M. Spann, and it is the further opinion of Court that the conveyances of Annie E. Strohecker and Lawrence M. Carson above referred to, vested a fee-simple estate in Dr. James C. Spann in so much of the land as was affected by their aforesaid deeds and should certainly entitle the plaintiff to dower therein.

It is therefore ordered, adjudged, and decreed that dower be admeasured and set off to the plaintiff in all of the lands passing to her husband, Dr. James C. Spann, under and by the terms of the will of his father, Lawrence M. Spann.

*Messrs. Purdy & Bland,* for appellants, cite: *Intention of testator governs:* 115 S. C., 217; 113 S. C., 419; Boreland, Wills, 151; 104 S. C., 445; 82 S. C., 213; 1 McC., Ch., 70; 1 Schouler, Wills (5th Ed.), Secs. 466, 469; Page, Wills, Secs. 460, 461; 1 Redf., Wills, 451; 113 S. C., 231. *Whole will to be considered:* 1 Sthouler, Wills (5th Ed.), Secs. 468, 473; Page, Wills, Sec. 462; 118 S. C., 513; *Dower:* 66 S. C., 370; 112 S. C., 331; 102 S. C., 18; 92 N. C., 75; 2 Minor Insts. (3d Ed.), 128; 54 Ala., 475. *Seizin of husband necessary:* 20 S. C., 554; 6 Rich. Eq., 72; 4 DeS.

Eq., 638. *No. fee conditional here:* 114 S. C., 183; 117 S. C., 16. *Widow of cestui que trust not entitled to dower in trust estate:* 4 DeS. Eq., 638; 4 Kent. Com. (14th Ed.), 43; 1 Scrib. Dower (2d Ed.), Chap. XIX, 396, 400; 78 S. C., 148. *Use not executed:* 36 S. C., 365; 29 S. C., 136; 23 S. C., 512; 23 S. C., 296; 61 S. C., 249; 16 S. C., 548; 114 S. C., 183; 116 S. C., 129; 10 S. C., 376; 26 S. C., 470; 23 S. C., 512; 1 Speers, 366. *Trust will not fail for want of a Trustee:* 61 S. C., 250; 4 Rich. Eq., 485; 106 S. C., 248.

*Mr. George D. Shore, Jr.,* for respondent, cites: *Widow entitled to dower:* 4 DeS., 617; 66 S. C., 362. *Trust was dry and inactive and use was executed:* 1 Civ. Code 1912, Sec. 3673.

*Mr. A. P. DuBose,* for respondent, cites: *When dower vests:* Coke, Litt., 450; 3 Bos. & Pull., 552; 53 Am. Rep., 405; 2 Bing., 447; 4 DeS., 617. *Property liable for debts:* 4 Rich. Eq., 46; 52 S. C., 88; Rich. Eq., 220.

*Messrs. Epps & Levy,* for respondent, cite: *Estate of James C. Spann was a fee simple defeasible:* 102 S. C., 178; 4 DeS., 617.

February 17, 1923.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

This appeal involves the construction of a will. The following statement appears in the record:

"This was an action commenced by the plaintiff in the Court of Common Pleas for Sumter County for the purpose of having dower set off and allotted to her in various tracts or parcels of land which were in the possession of her husband, James C. Spann, during his lifetime, in some of which he owned the fee simple absolute, and in some the estate or interest which he owned as a matter of dispute. Dower was allotted to her in certain of the tracts, and the right to dower was contested by the defendants in other

tracts. The case was heard before his Honor S. W. G. Shipp on an agreed statement of facts, and a decree was made by Judge Shipp on March 30, 1922, finding that the plaintiff was entitled to dower in the remaining lands. From this decree an appeal was taken by the defendants; notice of intention to appeal having been duly given and exceptions served.

"The issues in the case arise under the construction of the will of Lawrence M. Spann, bearing date August 31, 1874, the conveyances by Annie E. Strohecker and Lawrence S. Carson to James C. Spann, and the will of James C. Spann."

The facts are more fully stated in the decree of his Honor the Circuit Judge, which will be reported.

The first, sixth, sixteenth, and seventeenth clauses of Lawrence M. Spann's will are as follows:

"First. I give to my son James, the plantation where I now live including the Murray tract, the Graham tract and the few acres of land adjoining which I bought from Frierson, and also the two small places at Providence that I bought from Mr. J. K. Pollard, containing 'about ninety or one hundred acres; also one-fourth of my mill tract near Levi Burkett's."

"Sixth. The balance of my estate, real and personal, I give one-fifth to my son James, one-fifth to my daughter Bettie, one-fifth to my daughter Harriet, one-fifth to my daughter Ella and the other fifth to my two grandchildren Lawrence and Anna Carson."

"Sixteenth. All the estate, real and personal, given or intended to be given hereafter by this will I wish held in trust by my friend William J. Reynolds so that the portions or shares allotted to my son James shall not be subject to his disposal or liable for his debts, and the portions or shares allotted to my daughters shall not be subject to their disposal or liable for their own debts or the debts of their present or any future husbands."

"Seventeenth. Should any of my children die and not have a child or children, who shall marry or attain the age of twenty-one years, all the estate, real and personal, given them by this will I wish equally divided between my surviving children and my two grandchildren Lawrence and Anna Carson, who shall only be entitled to one child's portion."

In the decree of his Honor the presiding Judge, he says:

"In regard to the trust feature of the will of Lawrence M. Spann, as set forth in the sixteenth clause thereof, it is clear that the trustee was imposed with the sole duties of holding the legal title to the property passing under said will to James C. Spann, in order that the said beneficiary could not convey his interest in the said estate, and so that his creditors could not subject his interest to the payment of his debts."

This is a correct construction of that clause. James C. Spann was entitled to the sole possession of the property, out of which dower is claimed, and to the rents and profits. No other person had any beneficial interest therein, and no duty was imposed upon the trustee except to hold the legal title, so that the property in question should not be subject to the disposal of James C. Spann, nor liable for his debts. This was not sufficient to create a valid trust and to place the legal title in the trustee, as there was no duty for him to perform. This conclusion is fully sustained by the case of *Howe v. Gregg,* 52 S. C., 88; 29 S. E., 394.

For these reasons and those stated by his Honor the Circuit Judge, the decree of the Circuit Court is affirmed.

MESSRS. JUSTICES WATTS and COTHRAN concur.

MR. JUSTICE MARION concurs for reasons stated in concurring opinion of MR. JUSTICE COTHRAN.

MR. JUSTICE FRASER did not sit.

MR. JUSTICE COTHRAN (concurring): I concur in the result attained in the opinion of the Chief Justice, but by a different train of reasoning, which I shall present.

Action of dower in certain lands, in which an interest or estate was devised to James C. Spann, husband of the demandant by the will of his father, Lawrence M. Spann. Certain other lands held by James C. Spann, independently of the will, were also involved in the proceeding; in these the demandant has had dower admeasured; no question arises as to that admeasurement in this appeal. The case was heard by his Honor Judge Shipp upon an agreed statement of facts. He filed a decree allowing the demandant's claim of dower, and from that decree the defendants have appealed.

The issue turns upon the quantum and quality of the estate which James C. Spann, the husband, took under the will of his father, Lawrence M. Spann. The appellants contend that that estate was equitable, not legal; that the trust was not executed, for the reason that it was necessary for the trustee to hold the legal title to protect the estate from disposition thereof by the beneficiary, James C. Spann, and from sequestration by his creditors, and to preserve the contingent remainders supposed to be created by the will; that, the estate being equitable, the widow of the beneficiary is not entitled to dower therein; and that at best the estate in James C. Spann was not a freehold estate, subject to inheritance, but was a life estate. The respondent, on the other hand, contends that the Statute executed the trust; that James C. Spann took a fee simple defeasible under the will, a legal estate in which his widow was entitled to dower.

The testator, Lawrence M. Spann, died in 1874, leaving four children, James, Bettie, Harriet, and Ella. Bettie was the wife of A. P. Vinson, Harriet of Scott Carson, and Ella of L. W. Gillespie. The defendants Lawrence S. Carson and Annie E. Strohecker (formerly Carson) are the children of Annie Carson, first wife of Scott Carson, who afterwards married her sister, Harriet Carson. The will of Lawrence M. Spann was duly admitted to probate.

By the first clause of the will the testator devised certain real estate, the subject of this action, to his son James C. Spann; by the second he devised and bequeathed the balance of his estate, real and personal, one-fifth each to his son James, his daughter Bettie, his daughter Harriet, his daughter Ella and his two grandchildren Lawrence S. Carson and Anna Carson (now Strohecker); by the sixteenth (the vital) clause in the determination of this appeal he directed:

"All the estate real and personal given, or intended to be given thereafter by this will, I *wish held in trust by my friend William J. Reynolds, so that the portions or shares allotted to my son James shall not be subject to his disposal or liable for his debts,* and the proportions or shares allotted to my daughters shall not be subject to their disposal or liable for their own debts or the debts of their present or any future husbands."

By the seventeenth clause he provided:

"Should any of my children die and not have a child or children who shall marry or attain the age of 21 years, all the estate real and personal given them by this will, I wish equally divided between my surviving children and my two grandchildren Lawrence and Anna Carson, shall only be entitled to one child's portion."

In 1879 proceedings in partition were instituted which culminated in allotting to the several devisees their respective interests in the real estate devised.

On August 6, 1904, Lawrence S. Carson conveyed to James C. Spann all of his interest in the real estate devised to James C. Spann under the will. This interest consisted of the executory devise in his favor, created by the seventeenth clause of the will above quoted.

On December 14, 1911, Annie E. Strohecker, formerly Carson, conveyed to James C. Spann, all her interest in the real estate devised to James C. Spann, under the will. This interest consisted of the executory devise in her favor created by the same clause of the will.

On October 30, 1920, James C. Spann died, without ever having had a child born to him.   His sisters Bettie and Ella had predeceased him, and there were left of the beneficiaries provided for in the seventeenth clause of the will only Harriet S. Carson, sole surviving child of the testator, and her two children, Lawrence S. Carson and Annie E. Strohecker.   James C. Spann left a will, in which he devised to his nephew and niece, Lawrence S. Carson and Annie E. Strohecker, the interests which they had respectively conveyed to him by the deeds above referred to, and after certain legacies he devised all the residue of his estate to his wife, the demandant here, for life or widowhood, in lieu of dower, with remainder over to said nephew and niece, in fee simple, with certain limitations not material to the present inquiry.

Before the commencement of the present proceeding for dower, the demandant gave due notice of her election to renounce all claims under the will and to demand her dower instead.

There appears to be no contest over the proposition that if James C. Spann took under the will a legal, fee-simple defeasible estate, the widow is entitled to dower in the land so held by him.   It scarcely needs authority for the well-established rule, that a widow is not dowable of a trust estate.   It is so conceded by the attorneys for the respondent:

"It is also admitted that dower is a *legal* right and can attach only on a *legal* seizin of the husband during coverture."

—a proposition supported by *Milledge v. Lamar,* 4 Des., 638; 4 Kent's Com. (14th Ed.), 43; 1 Scribner, Dower (2d Ed.), 396–400; *Young v. McNeill,* 78 S. C., 145; 59 S. E., 986.

Further, the attorneys for the respondent say:

"If the trust created under and by the terms of the last will and testament of L. M. Spann was not executed by the

statute of uses, then Mrs. Spann would have no right of dower."

This is also the position taken by the attorneys for the appellants. So that the issue is determinable by ascertaining whether the interest devised in favor of James C. Spann, in the real estate in question, is legal or equitable.

It is clear from the sixteenth clause of the will that the testator intended and provided that whatever interest was devised to James C. Spann should be held by the trustee named, so that James C. Spann should not be permitted to dispose of any part thereof, and that none of it should be liable for his debts. It is equally clear from the seventeenth clause, that executory devises were provided for certain named beneficiaries. These devises were to become effective upon the happening of a double contingency: (1) That James C. Spann should die "and not have a child or children who shall marry or attain the age of 21 years"; and (2) that those of the class mentioned, "my children," should be alive at the time of the happening of the first contingency. The second contingency did not apply to Lawrence and Anna Carson, named specifically among the beneficiaries of the executory devise.

The pivotal question then is, whether or not these specific instructions to the trustee, these express declarations of the trust, are legally valid. If they are, there can be no question but that the trust falls within the class of trusts wherein the trustee is charged with duties to perform, in connection with the trust, which require him to retain the legal title, under which circumstances the statute does not execute the trust.

The general rule is thus expressed in *Carrigan v. Drake,* 36 S. C., 365; 15 S. E., 341 (a quotation from *Posey v. Cook,* 1 Hill, 413) :

"Perhaps the rule might be more accurately expressed to say that where the intention is that the estate shall not be executed in the *cestui que* use, and any object is to be

effected by its remaining in the trustee, then it shall not be executed."

In *Ayer v. Ritter,* 29 S. C., 135; 7 S. E., 53, the Court says:

"It has been uniformly held 'that the Statute will not execute the use as long as there is anything remaining for the trustee to do, which renders it necessary that he should retain the legal title in order fully to perform the duties imposed upon him.' " *Farr v. Gilreath,* 23 S. C., 512; *Huckabee v. Newton,* 23 S. C., 291; *Reynolds v. Reynolds,* 61 S. C., 249; 39 S. E., 391; *Young v. McNeill,* 78· S. C., 148; 59 S. E., 986; *Bristow v. McCall,* 16 S. C., 548; *McNish v. Guerard,* 4 Strob. Eq., 74; *Porter v. Doby,* 2 Rich. Eq., 53.

The duties which the appellants contend are imposed by the will upon the trustee, as being sufficient to prevent the operation of the Statute, are: (1) To hold the property so that the portion allotted to James C. Spann shall not be subject to his disposal; (2) to hold the property so that the portion allotted to James C. Spann shall not be liable for his debts; (3) to hold the property in order to protect the interests of contingent remaindermen.

I shall address myself first to the last alleged duty to protect the interests of contingent remaindermen.

The position taken by the appellants that the seventeenth clause of the will creates contingent remainders in favor of either the children of James C. Spann or the surviving children of Lawrence M. Spann and the two grandchildren named is clearly untenable. In the first place, no estate whatever is devised to the children of James C. Spann. Their nonexistence at the time of the death of James C. Spann is simply made the condition subsequent upon the happening of which the estate is to go over by way of executory devise to "my surviving children and my two grandchildren," naming them. The interest of these beneficiaries is not an estate in remainder at all, vested or con-

tingent, but an executory devise, taking effect upon the death of James C. Spann under the circumstances mentioned. The estate of James C. Spann was a fee simple defeasible. *Smith v. Clinkscales,* 102 S. C., 227; 85 S. E., 1064; *Davis v. Hodge,* 102 S. C., 178; 86 S. E., 478.

It cannot be said, therefore, that the estate was vested in the trustee for the purpose of protecting the interests of contingent remaindermen. In fact, if the interests of these beneficiaries could be construed to be contingent remainders, I do not see, since the Act of 1883 rendering it impossible for their interests to be destroyed by feoffment with livery of seizin, how it would be possible for James C. Spann, or any one else, to destroy them, and there would therefore be no peril against which the trustee would be expected to protect them.

In *Howard v. Henderson,* 18 S. C., 184, it is held that the legal title remains in the trustee, in order to protect contingent remainders, only where the deed shows that such was the purpose of interposing a trustee. This decision was rendered before the Act of 1883, and if since the passage of that Act the interests of contingent remaindermen, certainly of those *in esse,* needs no protection, even if the deed made provision therefor, it would be entirely superfluous. See, also, *Faber v. Police,* 10 S. C., 376, where it was sought to vest the legal title in the trustee for the protection of contingent remaindermen. The Court held that no such trust was *expressed,* and none would be *implied.*

Considering their interests as executory devises, there was nothing that the trustee could do to protect them; they would become effective upon the happening of the defeasance of James C. Spann's interest, regardless of what he or the trustee, or any one else, may have done or refrained from doing.

The inquiry therefore is reduced to this: Does the provision that the trustee shall hold the property so that the interest devised to James C. Spann "shall not be subject to his disposal or liable for his debts" create such a valid trust imposing active duties upon the trustee, as will prevent the execution of the trust under the Statute? Nothing can be gained by the argument of the respondent that under Section 3697, Vol. I, Code of Laws A. D. 1912, the equitable interest of a judgment debtor may be levied upon and sold under execution; that for that reason the trustee could not prevent a levy and sale if he desired to do so, and that consequently the trust must be deemed to have been executed under the Statute. It has been consistently held that Section 10, page 527, of the Act of 1712, of which Section 3697 is a reproduction, "contemplates only a case where the trust is a clear and simple one for the benefit of the debtor"; that is an executed trust under the Statute. *White v. Kavanagh,* 8 Rich., 377; *Bristow v. McCall,* 16 S. C., 545. Hence no progress is made in the determination of the issue whether it be an executed or an executory trust, an active or a passive one.

"Where spendthrift trusts are held valid, they are not affected by Statutes which declare that equitable estates shall be liable for the debts of the *cestui que* trust (*Leigh v. Harrison,* 69 Miss., 923; 11 South., 604; 18 L. R. A., 49), nor by those which give an equitable remedy by which a creditor may reach property of his debtor, in spite of the fact that it will not be applicable to his use until some future time." Note 2, A. & E. Dec. Eq., 640.

Narrowing the issue still further, the inquiry is whether or not the terms of the alleged trust constitute what is known as a "spendthrift trust." In a note to 2 A. & E. Dec. Eq., 632, the annotator says:

"By the policy of the common law, all restraints on the free and unfettered alienations of property were void; and this principle was adopted by equity except in the case of

separate use trusts for married women. Accordingly, a spendthrift trust, which is a trust created with the intent of assuring a maintenance for another, and at the same time securing him against the effects of his own improvidence, by providing that the fund which is to supply that maintenance shall not be voluntarily alienated by the beneficiary, or be subject to the claims of his creditors, was almost uniformly held void, both in England and the United States, until within the last few years, on the broad ground already stated, and on the further principle that it was also against the policy of the law that a man should have an estate to live on, but not an estate to pay his debts, and estates devised, bequeathed, or settled upon such trusts were accordingly held to be liable to satisfy the claim of creditors of the *cestui que* trust, and passed to his assignees in bankruptcy or insolvency."

He adds, however:

"This rule still prevails in England, but the current of authority in the United States, owing to various causes very clearly pointed out by Prof. Gray in the preface to the second edition of his work on Restraints on the Alienation of Property, is setting very strongly in the direction of upholding such trusts, so far as they create equitable life estates. Originally only two States, Pennsylvania and Massachusetts, held this view, * * * but in recent years the Supreme Court of the United States has adopted it, * * * and * * * other Courts have, one by one, discarded their earlier decisions, and given their adherence to the new doctrine."

The author then cites the following cases: *Steib v. Whitehead,* 111 Ill., 247; *Roberts v. Stevens,* 84 Me., 325; 24 Atl., 873; 17 L. R. A., 266; *Smith v. Towers,* 69 Md., 77; 14 Atl., 497; 15 Atl., 92; 9 Am. St. Rep., 398; *Maryland Grange Agency v. Lee,* 72 Md., 161; 19 Atl., 534; *Leigh v. Harrison,* 69 Miss., 923; 11 South., 604; 18 L. R. A., 49; *Montague v. Crane,* 12 Mo. App., 582; *Pickens v. Dorris,* 20 Mo. App., 1; *Jourolmon v. Massengill,* 86 Tenn., 81;

5 S. W., 719; *Gamble v. Dabney,* 20 Tex., 69; *Wallace v. Campbell,* 53 Tex., 229; *Patten v Herring,* 9 Tex. Civ. App., 640; 29 S. W., 388; *White v. White,* 30 Vt., 338; *Barnes v. Dow,* 59 Vt., 50; 10 Atl., 258; *Wales v. Bowdish,* 61 Vt., 23; 17 Atl., 1000; 4 L. R. A., 819; *Armstrong v. Pitts,* 13 Grat. (Va.), 235; *Camp v. Cleary,* 76 Va., 140; *Garland v. Garland,* 87 Va., 758; 13 S. E., 478; 13 L. R. A., 212; 24 Am. St. Rep., 682; *Banfield v. Wiggin,* 58 N. H., 155.

The Supreme Court of the United States, in the case of *Nichols v. Eaton,* 91 U. S., 725; 23 L. Ed., 254, sums up its conclusions in these words:

"But the doctrine that the owner of property, in the free exercise of his will in disposing of it, cannot so dispose of it, but that the object of his bounty, who parts with nothing in return, must hold it subject to the debts due his creditors, though that may soon deprive him of all the benefit sought to be conferred by the testator's affection or generosity, is one which we are not prepared to announce as the doctrine of this Court. * * * Nor do we see any reason, in the recognized nature and tenure of property and its transfer by will, why a testator who gives without any pecuniary return, who gets nothing of property value from the donee, may not attach to that gift the incident of continued use, of uninterrupted benefit of the gift, *during the life of the donee."*

In *Bank v. Adams,* 133 Mass., 170; 43 Am. Rep., 504, the Court says:

"We are not able to see that it would violate any principles of sound public policy, to permit a testator to give to the object of his bounty such a qualified interest *in the income* of a trust fund, and thus provide against the improvidence or misfortune of the beneficiary. * * * Under our system, creditors may reach all the property of the debtor not exempt by law, but *they cannot enlarge the gift of the founder of a trust, and take more than he has given."*

In *Rife v. Geyer,* 59 Pa., 393; 98 Am. Dec., 351, the Court says:

"That a benefactor has the power of thus restricting the enjoyment of his bounty through the medium of a trust *during the life of the beneficiary* is now the unquestionable law in this State."

In *Smith v. Towers* (69 Md., 77; 14 Atl., 497; 15 Atl., 92); 9 Am. St. Rep., 398 (quoting from the syllabus) it is said:

"A devise or bequest of a *beneficial life estate,* so as to secure its enjoyment to the beneficiary, without making it alienable by him, or subject to the claims of his creditors, will be respected by the Courts of this State."

In *Seymour v. McAvoy* (121 Cal., 438; 53 Pac., 946); 41 L. R. A., 544 (quoting from the syllabus), it is held:

"The interest of a beneficiary under a trust may be made by the author of the trust unassignable and free from subjection to the claims of the beneficiary's creditors."

In the opinion the Court says:

"Alienability is not an essential attribute of an equitable life estate in property, and there is nothing in the policy of the law prohibiting a donor from providing that his bounty shall be enjoyed only by those to whom he intends to extend it, and that property devoted by him to a trust otherwise valid shall not be diverted from its appointed destination."

In 25 R. C. L., 352, it is said:

"Though, as has been seen, the English doctrine as to spendthrift trusts has been approved and adopted in some jurisdictions, it has been rejected by more of the State Courts in this country and by the Supreme Court of the United States, and the weight of authority is to the effect that the founder of such a trust may secure the enjoyment of it to the objects of his bounty, by providing that it shall not be alienable by them or become subject to be taken by their creditors, and that this intention, when clearly expressed by him, will be carried out. * * * In many of the

cases in which the American doctrine is announced and followed, the Courts have taken the view that alienability is not an essential attribute or an equitable life estate in property, and there is nothing in the policy of the law prohibiting a donor from providing that his bounty shall be enjoyed only by those to whom he intends to extend it, and that property devoted by him to a trust otherwise valid, shall not be diverted from its appointed destination. The donor or devisor, as the absolute owner of the property, has the right to prescribe the terms on which his bounty shall be enjoyed, unless such terms are repugnant to the law, and inasmuch as such a gift or devise takes nothing from the prior or subsequent creditor of the beneficiary to which they previously had the right to look for payment, they cannot complain that the property or income shall go or be paid personally to the beneficiary and shall not be subject to the claims of creditors"—citing a long list of cases from the United States Supreme Court, California, Connecticut, Illinois, Kansas, Maine, Maryland, Massachusetts, Mississippi, Missouri, Oregon, Pennsylvania, Vermont, Wisconsin.

The Supreme Court of the United States bases its conclusion upon the declaration that alienability is not an essential element of an equitable life estate. If that be true, it is difficult for me to conceive of any good reason why such a trust is not valid, for the objection generally urged against its validity is that it constitutes a restraint upon alienation. The property devised or donated belongs to the devisor or donor; it is his property, to dispose of as he pleases; he should be allowed, as an incident of that proprietary right, to control his bounty; the trust should be upheld, not because the law is concerned to keep the donee from wasting it, though it may be as much concerned about this as to protect the homestead of a debtor, but mainly because it is concerned in protecting the donor's right of property. The donor owes the donee nothing and

gets nothing in return; the transaction concerns him and the donee only. The existing creditor has no right to complain if his debtor should acquire a certain interest, which has cost the creditor nothing, but which is walled against his depredation. The subsequent creditor has no right to complain, for he has extended credit with full knowledge of the debtor's protected title, and if it be not a restraint upon alienation of property, who is to complain? As is said in the case of *Guernsey v. Lazear,* 51 W. Va., 328; 41 S. E., 405:

"Whose property is this? Not that of the creditors of the son or of the husband. They have no right to that property. If they have lent credit in the life of the father or of the wife, they did it at their peril, for neither son nor husband had any interest in that property. If they extended credit after the creation of the trust, they did it with their eyes open to the trust and the character of the estate created by it. What have these creditors lost of which they can justly complain?"

As is forcibly expressed in 26 A. & E. Enc. L., 141:

"As to past debts such creditors are no worse off after their debtor becomes the donee of a spendthrift trust than they were before, and as to future debts, it is their own folly if they choose to rely upon a fund which by the very terms of its donation it is impossible for them to reach, of which fact they are advised actually or constructively by the registry laws of the United States. Moreover, it is not deemed against public policy for a testator to provide a support for a spendthrift child, since it is the interest of the public that such child should not become a public burden. The rights of creditors are not deemed any more sacred than the right of property involved in the execution of the trust, or the right which a testator has that the will he made should be carried out, and not one that the Courts made for him."

In *Sherman v. Havens*, 94 Kan., 654; 146 Pac., 1030; Ann. Cas., 1917B, 394 (quoting from the syllabus), it is said:

"The doctrine of spendthrift trusts approved by the majority of American Courts by which it is settled that it is lawful for a testator or grantor to create a trust estate *for the life of the cestui que trust,* with the provision that the latter shall receive and enjoy the income at times and in amounts either fixed by the instrument or left to the discretion of the trustee, and that such income shall not be subject to alienation by the beneficiary, nor liable for his debts, accords with the general policy which this State has always followed respecting the rights of creditors and debtors."

In *Posey v. Cook,* 1 Hill, 413, there was a conveyance to the trustee in trust for the use and benefit of one Charles Posey until his youngest son should attain his majority, or, if Charles Posey should die before that time, then for the benefit of Charles Posey's family for a home until then; "that the said tract of land and premises is not to be liable for the present debts or future contracts of the said Charles Posey." At the efflux of Charles Posey's interest the land was to be equally divided between two other persons named. The question at issue was the execution of the trust under the Statute. The Court says:

"Where the intention is that the estate shall not be executed in the *cestui que* use, and any object is to be effected by its remaining in the trustees, there it shall not be executed. In the present case, there can be no doubt about the intention. The donor declares that it shall not be subject to the debts or contracts of Charles Posey. *This cannot be, if he* [Charles Posey] *is to have the legal estate.* The object to be effected is that the trustees shall retain the legal estate, so as to protect it from being sold for Charles Posey's debts, until the period of division shall arrive, and in the event of his death before that period, to preserve it as a home for

his wife and children. This is what the trustees are to *do."*

It will be noticed that there is no reference in this case to the doctrine of spendthrift trusts, and there is enough in the duties of the trustee beyond that of protecting the interest of the beneficiary from his creditors to justify the conclusion that the Statute did not execute the trust; though great emphasis is placed in the opinion upon that feature.

In *Young v. McNeill,* 78 S. C., 143; 59 S. E., 986, the will devised certain property to a trustee to allow W. W. DuRant the use of the income for life; "it being my express will and intention that no part or parcel of the said estate shall in any wise be subject to the debts or contracts of the said William W. DuRant." The Court, without special reference to the subject of spendthrift trusts, sustained the validity of the trust, as imposing a duty upon the trustee "to prevent the land from being made subject to the debts or contracts of the life tenant." The Court through the present Chief Justice says:

"The words 'it being my express will and intention that no part or parcel of the said estate shall in any wise be subject to the debts or contracts of the said William W. DuRant, that do now or may hereafter exist,' bring the case under consideration within the principle just stated, as they clearly show that the duty imposed upon the trustees rendered it necessary for the legal title to remain in them, in order to prevent the land from being made subject to the debts or contracts of the life tenant."

The "principle just stated" referred to was the principle declared in *Posey v. Cook,* 1 Hill, 414, quoted above. The Court makes no reference to the doctrine of spendthrift trusts.

The case of *Heath v. Bishop,* 4 Rich. Eq., 46; 55 Am. Dec., 654, is frequently cited by text-writers and annotators as having committed this Court to the English doctrine. There are in that case expressions of the strongest character sustaining that interpretation, but as a matter of fact the

validity of spendthrift trusts were not at all involved in the case, and such expressions are *obiter dicta* of the baldest kind. There the grantor has conveyed to a trustee two slaves, in trust to pay over to the beneficiary annually the use, profits and income from the labor or hire of said slaves, with the further disposition of the fee after the death of the beneficiary. There was not a word in the conveyance tending to render the interest of the beneficiary inalienable or exempt from liability for his debts. The beneficiary had left the State, and a fund had accumulated from the hire of the slaves. The creditors sought to have it applied to their claims, and very properly the Court ordered that done. The chancellor in his decree says:

"Surely a father may provide a maintenance for a prodigal and insolvent son beyond the reach of creditors," and even in such a case as it was, with no provision against alienation or liability for debts, he further remarked:

"If John G. Bishop [the beneficiary] were within this jurisdiction and without other means of maintenance than from the hire of these two slaves, I should probably reject the prayer of the petition."

The chancellor's decree, requiring the accumulated fund to be paid to the creditor, was modified by directing the institution of a creditor's bill. The observations apparently applicable to spendthrift trusts were entirely outside of the issues in the case.

It is no reply to the conclusion I have arrived at to invoke the doctrine announced in *Symmes v. Cauble*, 85 S. C., 435; 67 S. E., 548, which has been technically referred to as the doctrine of "cessor"; that is a provision that, if the interest of the beneficiary should be attempted to be subjected to his debts, it should "cease" and vest in another. That arrangement is perfectly valid, but it does not follow that it is exclusive.

However firmly the doctrine seems to be now 'established in favor ·of the validity of the spendthrift trusts, the limitation is equally firmly established that they are confined to *equitable life estates* or to the income from certain property or funds, and that they cannot exist in reference to *equitable fee-simple estates,* of which the estate in the case at bar is an example.

"The law goes sufficiently far in sanctioning the removal of property from the field of commercial and business intercourse, *· * * when it sustains the inalienable *equitable life estates* known as spendthrift trusts." *Kerns v. Carr,* 82 W. Va., 78; 95 S. E., 606; L. R. A. 1918E, 568.

The doctrine is clearly indicated in an exceedingly able opinion by Judge Ritz, presiding Justice of the West Virginia Supreme Court, in the case of *McCreery v. Johnston,* 90 W. Va., 80; 110 S. E., 464, where he says:

"This conclusion is supported by the authorities, so far as we have been able to examine them. In nearly all of the cases in which spendthrift trusts have been upheld only equitable life estates were attempted to be granted. The doctrine of all of these cases, however, is that a departure from the rule against restraints will only be allowed to the extent necessary to accomplish the testator's purpose. The case of *J. S. Menken v. Brinkley,* 94 Tenn., 721; 31 S. W., 92, is reported in 2 American & Eng. Dec. in Equity, at page 619, and there is attached to this report of the case an extensive monographic note upon this question of spendthrift trusts. The author of that note, after reviewing the authorities, concludes with this language, which has peculiar application to the instant case: 'But the creation of an inalienable equitable fee is not allowed anywhere.' The doctrine is fully supported by * * * Keyser's Appeal, 57 Pa., 236, where, in an opinion delivered by Judge Sharswood, the power to impose such a restraint upon an equitable fee-simple estate was denied. This case is, perhaps, of peculiar significance, inasmuch as the State of Pennsylvania is the

mother of this class of trusts. This doctrine is also supported by the following authorities: Page on Wills, § 684; Gray on the Rule Against Perpetuities, § 235; Perry on Trusts, § 386A; *Sparhawk v. Cloon,* 125 Mass., 263."

It cannot be argued successfully that the testator might have established a valid spendthrift trust by creating an *equitable life estate* in James C. Spann, and that, as the equitable fee-simple estate included that, the trust was valid as to the income. The answer to that is that he did not do what he might legally have done, but did that which was absolutely void; and, the trust being void, the trustee was left with no duty upon his hands; a condition which assured the execution of the trust and the right of the demandant to dower.

With the greatest respect for the opinion of the learned Chief Justice, I do not think that the case of *Howe v. Gregg,* 52 S. C., 88; 29 S. E., 394, is at all controlling. The decree on circuit in that case was written by Judge Benet, the opinion of the Court by Justice Pope; Chief Justice McIver and Justices Jones and Gary concurring *in the result only.* The case is therefore simply an adjudication of the legal rights of the parties to that action. But aside from that it is impossible to determine what was decided in that case. The circuit decree finds that there was a direct devise to James Arnold, and his wife of a life estate, without the interposition of a trustee and of course there was no pretense of a spendthrift trust, and, being a legal estate, the provision for immunity from the creditors of the life tenants was necessarily void. In the opinion a suggestion is made that the life tenants were *quasi* trustees for the children; but the result was the affirmance of the circuit decree, which in the conclusion of three out of four Justices of itself expressed a dissatisfaction with the reasoning of the opinion.

The following South Carolina cases bear more or less directly upon the subject discussed: *Ramsay v. Marsh,* 2

McCord, 252; 13 Am. Dec., 717; *Escheator v. Smith,* 4 McCord, 452; *Ford v. Caldwell,* 3 Hill, 248; *Jenney v. Laurens,* 1 Speers, 356; *McCaw v. Galbraith,* 7 Rich., 74; *McNish v. Guerard,* 4 Strob. Eq., 66; *Porter v. Doby,* 2 Rich. Eq., 49; *Heath v. Bishop,* 4 Rich. Eq., 46; 55 Am. Dec., 654; *Williams v. Holmes,* 4 Rich. Eq., 475; *Creighton v. Pringle,* 3 S. C., 77; *Faber v. Police,* 10 S. C., 376; *Bouknight v. Epting,* 11 S. C., 71; *Howard v. Henderson,* 18 S. C., 184; *Farr v. Gilreath,* 23 S. C., 502; *Bowen v. Humphreys,* 24 S. C., 452; *Wieters v. Timmons,* 25 S. C., 488; 1 S. E., 1; *Ayer v. Ritter,* 29 S. C., 135; 7 S. E., 53; *Smith v. Smith,* 24 S. C., 304; *Snelling v. Lamar,* 32 S. C., 72; 10 S. E., 825; 17 Am. St. Rep., 835; *McNair v. Craig,* 36 S. C., 100; 15 S. E., 135; *Rivers v. Rivers,* 36 S. C., 302; 15 S. E., 137; *Robinson v. Ostendorff,* 38 S. C., 66; 16 S. E., 371; *Holmes v. Pickett,* 51 S. C., 271; 29 S. E., 82; *Howe v. Gregg,* 52 S. C., 88; 29 S. E., 394; *Bank v. Garlington,* 54 S. C., 413; 32 S. E., 513; *Humphrey v. Campbell,* 59 S. C., 39; 37 S. E., 26; *Reynolds v. Reynolds,* 61 S. C., 243; 39 S. E., 391; *Uzzell v. Horn,* 71 S. C., 426; 51 S. E., 253; *Early v. Early,* 75 S. C., 15; 54 S. E., 827; *Young v. McNeill,* 78 S. C., 143; 59 S. E., 986; *Pope v. Patterson,* 78 S. C., 334; 58 S. E., 945; *Breeden v. Moore,* 82 S. C., 534; 64 S. E., 604; *Steele v. Smith,* 84 S. C., 464; 66 S. E., 200; 29 L. R. A. (N. S.), 939.

MR. JUSTICE MARION concurs.